Paul E. ROBINSON, Executor of the Estate of Olive B. Robinson, Deceased, Respondent,

v.

Hall DeWEESE, Appellant.

No. 23956.

Kansas City Court of Appeals.

Missouri.

June 1, 1964.

Loomis & Lacy, by J. M. Loomis, Kansas City, for appellant.

Robert F. Redmond, III., Kansas City, Terrell, Hess, Van Osdol & Magruder, Kansas City, of counsel, for respondent.

MAUGHMER, Commissioner.

The original plaintiff, Olive B. Robinson, owner of an undivided one-half interest in the 1280 acre Robinson ranch, located in the state of Kansas, on May 10, 1961, sued the defendant Hall DeWeese, a Kansas City, Missouri lawyer and owner of a one-fourth interest in the ranch. The petition alleged that the plaintiff, the defendant and one Audrey C. Meade, owner of the remaining one-fourth share, agreed to and did accept an offer of $85,000 made by one H. C. Dean for the purchase of said ranch; that the full purchase price of $85,000 was paid by the purchaser to the defendant as the "representative of the three sellers"; that plaintiff is entitled to one-half of the sale price, less her proportionate share "of necessary expenses of the sale", but that after the sale and after his receipt of the

$85,000 defendant asserted plaintiff owed him a fee of $6,000, which amount he retains and refuses to pay to plaintiff; that she had demanded payment on March 11, 1961, and prayed judgment for $6,000, with interest from and after March 11, 1961. Mrs. Olive B. Robinson died on May 12, 1961, and thereafter the present plaintiff, Paul E. Robinson, her son and executor of her estate, was duly substituted as party plaintiff.

Defendant in his answer admitted plaintiff owned the one-half interest, admitted the sale for $85,000, and that he had received the full purchase price. Defendant alleged that "Olive B. Robinson agreed on more than one occasion to pay plaintiff a fee for his services and for her part of the expenses", and that the sum of $6,000 was a reasonable amount for his fee and out-of-pocket expenses.

The case was tried under these pleadings, that is, defendant's assertion of an oral contract with Mrs. Robinson, and that the claimed $6,000 fee was reasonable in amount. The jury verdict on June 5, 1963, was for plaintiff in the sum of $5,587.66, with interest from March 11, 1961 "to date at 6% in the sum of $784.81, making a total of $6,372.47". It is apparent from the verdict that the jury refused defendant's claim for the $6,000 fee, but credited him with expenses in the sum of $412.34. After denial of his after trial motions, defendant appealed.

In 1920, George W. Robinson purchased 1200 acres of land lying in Comanche and Kiowa Counties, Kansas. In 1957, an additional 80 acres was purchased by the then owners. This 1280 acres, referred to in the testimony as the Robinson Ranch, is the land from the sale and management of which the present litigation arose. Since 1920, and as a result of deaths, inheritances and sales there have been changes in ownership. However, Olive B. Robinson, the original plaintiff, became owner of an undivided one-half upon the death of her husband, G. Wilse Robinson, in January, 1958.

The defendant DeWeese bought his one-fourth interest in 1955. Audrey C. Meade owned the other one-fourth share. There is no dispute as to ownership.

It appears that Omar Robinson "took the principal burden of looking after the property" until his death in 1954. Thereafter, Dr. G. Wilse Robinson performed that function until his death in 1958. The defendant had "officed with" Omar Robinson for 14 years and acted as attorney in the administration of the estates of Omar and of his wife. The defendant also represented Audrey C. Meade (the other share owner) in various capacities until her death in December, 1961. Mr. C. H. Dean, the ultimate purchaser, had first leased the ranch in 1954. At the time the present controversy arose and during the period when defendant alleged he was performing the services for which he claimed the fee of $6,000, Mr. Dean was tenant under a lease which would have expired on February 28, 1962.

The parties generally agreed that in the fall of 1960, defendant entered into discussions with the other owners, exploring the possibility of selling the ranch or securing a more profitable lease. During the 1960 Christmas holidays, Mrs. Olive B. Robinson went to Pennsylvania to visit her grandchildren. While she was away the defendant telephoned her attorney Mr. G. A. Magruder, Jr., and inquired if she would sell her one-half interest for $22,000. Her refusal to sell for that price was communicated to defendant.

On January 14, 1961, a meeting was held in Mrs. Robinson's apartment. Present at this meeting, in addition to the three owners, were Mrs. Robinson's attorney, Mr. Magruder, and her son Paul Robinson, who had a few days before been given a general power of attorney by his mother. At this meeting the defendant again brought up the proposal for a sale of the ranch. Defendant indicated he had located some sale prospects but declined to identify them except he did mention a Mr. Parkin. Neither did he name any definite sale price. Mrs. Rob-

inson refused to consent to a sale until a definite price had been established.

The written contract of sale to Mr. C. H. Dean under which the "sellers agree to sell and convey all the sellers' right, title and interest" for the sum of $85,000 was signed by all parties on February 8, 1961. The sale was finally closed on February 28, 1961, with the full purchase price being paid to defendant. A meeting was arranged to be held in Mr. Magruder's office on March 11, 1961 for distribution of the proceeds. A few days before this meeting DeWeese had advised Magruder that he was charging Mrs. Robinson a fee of $6,000. Mr. Magruder told him that the payment of a fee was Mrs. Robinson's business "and of course would have to be approved or disapproved by her". At this meeting defendant submitted to Mrs. Robinson a Closing Statement which he had prepared. It contained two deductions from the $42,500 gross amount which was due to Mrs. Robinson for her one-half interest. The first was a deduction of $301.12, representing Mrs. Robinson's share for abstract, revenue stamps and miscellaneous expenses. There was no objection to this charge. The second deduction reads: "Less: Attorney's fee per statement, $6,000.00". Attached thereto was the Statement which listed in some degree of detail the alleged services. We summarize the contents of that Statement:

"Trips to Ranch to investigate fence conditions * * *".

"Trips to obtain figures on best rental income obtainable * * *".

"Ascertainment of sufficient facts to warrant service of notice to terminate lease * * *".

"Conduct of negotiations to obtain as high a price as possible for the sale of ranch, involving additional trips and long distance phone calls".

"Firm demand for all cash and no purchase money mortgages * *".

"Avoidance of clouds on title in contract of sale by specifying special warranty deed of all sellers' right, title and interest, avoidance of apparent necessity and uncertainty of a quiet title suit".

"Negotiating acceptance of contract by buyer".

"Meeting buyer's objections" as to effect of a mineral deed to one Dorothy Egger.

"Demand of receipt of funds under contract * * *".

"Sale consummated for $85,000 cash"

"Ranch variously estimated and duly appraised for $38,400 and $50,000 and taxes accordingly paid".

"To attorney fee for services rendered $6,000.00".

It is of course noted that the $6,000 was charged against the owner of only a one-half interest. Mrs. Robinson and her son Paul refused to pay the $6,000 or any part of it and demanded full payment of her share of the purchase price. Defendant refused to pay her any part of the money, even the $36,198.88 which was admittedly due after deducting the $6,000 fee. Some days later he did remit all but $6,000 to Mr. Magruder, attorney for the plaintiff.

The defendant gave personal testimony at the trial and elaborated to some extent as to the services performed and which were described generally in the Closing Statement. An objection that DeWeese was incompetent as a witness under the "Dead Man's Statute" was overruled for the reason that his deposition had been taken by plaintiff. He testified that the title to the ranch was clouded, two quiet title suits had been litigated, (defendant not participating in either); that he secured three quit-claim deeds from persons whom he said might have a claim to the ranch; that he paid $150 each for these deeds and made a trip to Seattle, Washington to obtain them.

However, the named grantee in each deed was Mrs. Meade—not all three of the ranch owners, and none of these deeds was ever recorded. Defendant admitted that Dr. Robinson looked after the ranch until his death in 1958, but claimed that he helped. Mr. DeWeese gave a further description of his services. He said he discussed ranch matters with Mrs. Robinson five or six times in 1958, and that on one of these occasions she had dicussed the effect of the mineral deed with him. He communicated with Mr. Dean relative to fence repair and upkeep of the buildings. He made two trips to the ranch in 1958 (1600 miles and $30 cash each trip). In 1959 he again made two trips to the ranch and talked with Mrs. Robinson six or seven times—about the same in 1960. He described the trip to the state of Washington for the three quit-claim deeds which were never recorded and which cost $450, plus defendant's expenses. He said he "handled paying the taxes," negotiated tentatively for a better lease (No new lease of any kind was ever executed), and obtained offers to buy the farm—one offer of $50,000, one for $77,000, and finally the Dean offer of $85,000, which the owners accepted. Defendant claimed he spent a "considerable amount of time" looking up Kansas law on a "number of questions".

Mr. DeWeese asserted in his pleading and in his testimony that Mrs. Robinson orally employed him relative to the ranch matters, but he never really fixed a definite time and place where she specifically spoke of employing him as her attorney or agreed to pay him a fee. Appellant in his brief says "the first discussion between the defendant and Mrs. Robinson relevant to an attorney's fee was apparently in the summer of 1958 (Tr. 130) at which time Mrs. Robinson stated she expected to pay the defendant, and reimburse him for her half of his expenses (Tr. 131)." We quote the actual testimony from pages 130, 131 of the transcript:

"Q. (By Mr. Loomis) Let me ask you this, Mr. DeWeese. Did Mrs. Robinson at any time discuss with you any question about a fee? A. Yes.

"Q. And when? A. In the summer of 1958, and explicitly before I made the trip in October, she wanted to know about what the expenses on the trip were, and I told her they would be very nominal, that my money out of pocket would be limited to my actual expenses, like gas and oil and meals for the two days, and one lodging. Sometimes there was a second lodging, because it is considerable distance, and I gave her an approximation too, as near as I could tell those had been running me $30.

"Q. What about the attorney fee? Any discussions? A. She mentioned at that time that she wanted me to know that she expected to pay me and reimburse me on the expenses for her half which was expressly stated, and also that she wanted to know what the condition of the fences was and what the laws required us to do out there".

This testimony covering a meeting and conversation between Mrs. Robinson and defendant, joint owners of the ranch, cannot, we think, be reasonably construed as showing an oral contract of employment. However, later on defendant was asked this question and made this answer (Tr. 179, 180):

"Q. What was her expression at that time? A. She wanted to know what my expenses would be, and she wanted me to understand she was going to reimburse me for the expenses, and that she wanted to ascertain the answers to those things and expected to pay me an attorney's fee on the matter. At that time we had also discussed the quiet title suit, and she said she didn't want at that time to decide that until after I had gotten back from the trip, when we had a session, the three of us."

■ Mr. DeWeese claimed that his out-of-pocket expenses on the various trips to the ranch, to Washington for the quit-claim deeds et al. was $884.68 of which Mrs. Robinson owed half. The jury allowed defendant all of this expense except $30, but did not allow the attorney fee. In our opinion there is substantial, credible testimony to support the verdict that Mrs. Robinson did not employ defendant as her attorney. Considering that defendant carried the burden of proving the contract, it is quite evident that the issue was at least debatable and defendant, at most, was only entitled to have this fact question decided by the jury.

■■ Two days after the conference of March 11, 1961, when payment of defendant's claimed attorney fee was refused and defendant then left, retaining possession of all of Mrs. Robinson's share of the purchase price, Mr. Magruder, her attorney, wrote DeWeese a letter, insisting that defendant had no right to withhold any funds over and above the claimed attorney fee. This letter contained the following statement:

"Please be advised that Mrs. Robinson stands ready, as she has always been, to pay you a reasonable fee for your services in connection with said sale. The difficulty, of course, lies in determining what a reasonable fee is in view of all of the facts and circumstances".

Defendant offered this letter and statement in evidence. It was refused and defendant assigns error therefor. Appellant cites Gibson v. Metropolitan Life Ins. Co., Mo. App., 147 S.W.2d 193, as authority for admission of the letter. In the Gibson case plaintiff's attorney, in stating her claim, admitted the premium was unpaid, but claimed on a different theory. It was there held, and we quote Syllabus 3:

"Before an attorney can speak for his client, there must be either express or implied authority, but an attorney employed to present a claim may state to debtor what the claim is, and therefore, in so doing, make admissions as to its character, which would be proper evidence against client, if in a suit subsequently brought the client presented an entirely different theory as basis of the claim".

The rule is, we think, properly set forth in 7 C.J.S. Attorney and Client § 80a, page 899, which states:

"The broad implied or apparent powers of an attorney with respect to the conduct or control of litigation are, however, limited to matters which relate only to the procedure or remedy. The employment of itself confers upon the attorney no implied or apparent power or authority over the subject matter of the cause of action or defense; and, unless the attorney has expressly been granted authority with respect thereto, the power to deal with or surrender these matters is regarded as remaining exclusively in the client".

There is no evidence presented showing that Mr. Magruder was authorized by Mrs. Robinson to employ defendant as her attorney or bind her to pay him an attorney fee for past services allegedly furnished. We believe the letter was properly excluded.

■ Defendant complains as to Instruction No. 1, which we set out in full:

"The Court instructs the jury that if you find and believe from the evidence in this case that there was no agreement between Olive B. Robinson and the defendant whereby defendant was employed as Mrs. Robinson's attorney in connection with the Robinson Ranch or the sale thereof, then your verdict should be for the plaintiff in the amount of $6,000 less such sum, if any, which you find and believe from the evidence that Mrs. Robinson agreed to pay to

defendant to reimburse him for his expenses, with interest on the amount of your verdict at the rate of six percent per annum from March 11, 1961 to date".

Defendant says the instruction is an incorrect statement of the law, and that it was not necessary to prove a contract of employment. Defendant's pleading alleged and his trial procedure was upon the theory of an oral contract of employment and then a recovery of a reasonable fee for the services rendered. We believe the instruction was quite proper in this case.

We overrule defendant's contention that the verdict in and of itself demonstrates bias and prejudice on the part of the jury. The trial judge overruled the motion for new trial. The trial judge apparently did not believe the verdict showed bias or prejudice and neither do we.

 Lastly, defendant urges that Instructions 3 and 4 should not have both been given because thereby the fact that defendant bore the burden of proof was overemphasized. Instruction No. 3, stated the burden was on defendant to show an agreement of employment. Instruction No. 4 declared that if the jury *found an agreement of employment,* then the burden rested with defendant "to establish by a preponderance of the evidence the amount to which he is entitled as reasonable compensation * * *". We believe it was quite proper to give both Instructions 3 and 4.

We find no reversible error. The verdict is supported by substantial and credible evidence. The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.