**Clifford O. BARTON and Goldie Barton, Appellants,**

**v.**

**Richard SNELLSON, Respondent.**

**No. 50748.**

Missouri Court of Appeals, Eastern District, Division One.

July 21, 1987.

Motion for Rehearing and/or Transfer Denied Aug. 27, 1987.

James S. Collins, II, St. Louis, for appellants.

John A. Michener, Kathi L. Chestnut, St. Louis, for respondent.

SATZ, Presiding Judge.

Plaintiffs, Clifford and Goldie Barton (Bartons), sued defendant, Richard Snellson (Snellson), for personal injuries. After a hearing, the trial court granted Snellson's motion to enforce a settlement agreement

and dismissed the Bartons' action. The Bartons appeal. We affirm.

In Missouri, we have no specifically defined process for enforcing an agreement settling a pending case. One would think the process should be no different than enforcing a release or settlement agreement reached prior to the filing of the action. In the latter instance, the release or settlement agreement is simply asserted as an affirmative defense. *See, e.g. Winter v. Elder*, 492 S.W.2d 146, 148 (Mo.App. 1973). However, this Court has held a settlement agreement reached in a pending case may be enforced by a motion filed in that case. *Leffler v. Bi-State Development Agency*, 612 S.W.2d 835, 836 (Mo. App.1981). *Wenneker v. Frager*, 448 S.W.2d 932 (Mo.App.1969); *see also, Southwestern Bell Tel. Co. v. Roussin*, 534 S.W.2d 273, 276 (Mo.App.1976).

Following this procedure, the trial court here heard testimony and acted as a factfinder on Snellson's motion to enforce the settlement agreement; in effect, the action below was a court tried case on the merits of Snellson's motion. Our review, therefore, is the same as in other court tried cases and is governed by the well-known principles of review stated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

So viewed, the record here shows that, in July 1979, the Bartons and Snellson were involved in an automobile accident. The Bartons hired an attorney, A.L. Tidlund (Tidlund), to represent them in a possible lawsuit arising out of the accident. Tidlund and Gerald Hogg (Hogg), an employee of Snellson's insurance carrier, negotiated from October 1979 to July, 1984, attempting to settle the Bartons' claim. No agreement was reached.

In July, 1984, it appeared the case would be tried rather than settled. Tidlund, with the Bartons' consent, asked another attorney, Nile Griffiths (Griffiths), to be his co-counsel. Griffiths agreed, and, from late July 1984 to August 30, 1984, Griffiths negotiated with Hogg. According to Hogg, Griffiths "settled the case" for $3,000 on August 30, 1984. The Bartons, however, personally rejected the $3,000 offer and filed suit against Snellson.

Snellson filed a motion to dismiss the Bartons' petition and to enforce the alleged settlement agreement. At the hearing on the motion, Hogg testified the property damages were settled for $2500, and this sum was paid to the Bartons on July 1, 1979. In October, 1979, Hogg and Tidlund began negotiating the settlement of the Bartons' claims for personal injuries. Tidlund demanded $4500.00; Hogg countered with $1560.00; Tidlund reduced his demand to $3000.00; and Hogg countered with $1750.00. Tidlund rejected this and said he would file suit. Subsequently, in July, 1984, Hogg received a letter from Griffiths stating he would be acting as Tidlund's co-counsel. In August, Hogg offered Griffiths $2000.00, and, according to Hogg, Griffiths said "he was tied in with the previous demand of $3,000.00". Hogg offered them $2500.00, and Hogg said, on August 30, 1984, he "concluded the matter" for $3,000.00.

Hogg never asked Griffiths or Tidlund whether either one had authority to settle the case for the Bartons. He just "presumed" they were "representing their client" and "presumed" Griffiths had authority to settle the case for $3,000. However, Clifford Barton, Tidlund and Griffiths all testified the Bartons never gave either Tidlund or Griffiths express authority to settle the case, for $3,000.00 or for any amount. Based upon this evidence, the trial court entered an order enforcing the settlement agreement for $3,000.00 and dismissed the Bartons' petition. This appeal followed.

The trial court could have chosen to disbelieve the testimony of Clifford Barton, Tidlund and Griffiths. This simply means the Bartons failed to show their attorneys were expressly prohibited from settling their claims without their authority. This leaves Hogg's testimony which, if believed, shows Hogg never asked Tidlund or Griffiths whether either was authorized to settle the claims, and neither Tidlund or Griffiths ever expressly volunteered this information. Hogg's testimony does show,

however, that both Tidlund and Griffiths did negotiate with him about the settlement of the Bartons' claims. Thus, the narrow issue here, is whether the negotiations of Tidlund and Griffiths bound the Bartons, or, more specifically, whether Tidlund and Griffiths, as agents, had "authority" to bind the Bartons, their principals, to the settlement as understood by Hogg.

■ The general principles defining the authority of an agent are easy to state. Express authority is usually created by the principal telling his agent what to do in express terms. *See, e.g., Hyken v. Travelers Ins. Co.*, 678 S.W.2d 454, 457 (Mo.App. 1984). Restatement (Second) of Agency § 7, Comments a and c (1958).[1] Implied authority consists of those powers of the agent implied by or inferred from the authority expressly granted; i.e., those powers incidental and necessary to carry out the express authority. *E.g. Mark Century Corp. v. Tiger Broadcasting Co.*, 509 S.W.2d 737, 738 (Mo.App.1974).[2] Thus, to determine the existence and scope of express and implied authority, the focus is primarily on the principal and agent.

■ Apparent authority, however, differs both in concept and focus. To determine the existence and scope of apparent authority, the focus is on a third person. Apparent authority is created by the conduct of the principal which causes a third person reasonably to believe that another has the authority to act for the principal. *See, e.g. Wynn v. McMahon Ford Co.*, 414 S.W.2d 330, 336 (Mo.App.1967). *See* Restatement (Second) of Agency, § 8, Comment a. (1986).

■ The general principles defining the authority of an attorney, as an agent, for his client, the principal, track these principles. We, in Missouri, seem to have adopted these general principles. In doing so, our courts have stated and held that, in processing a case in court, an attorney's implied authority is limited to procedural matters. It does not extend to the surrender of any of the client's substantive rights. *See, e.g. Robinson v. Deweese*, 379 S.W.2d 831, 836 (Mo.App.1964); *Sudekum v. Fasnacht's Estate*, 236 Mo.App. 455, 157 S.W.2d 264, 266 (1942). Thus, an attorney must have express authority to bind his client to a settlement agreement; and, conversely, no implied authority to settle a client's claim arises from the mere fact of an attorney's employment. *Robinson* at 836 and *Sudekum*, 157 S.W.2d at 266.

Applying these principles to the present record, the trial court could *not* have properly concluded that the Bartons' attorneys, Tidlund and Griffiths, had either the express or implied authority to bind the Bartons to a settlement agreement. Therefore, it would seem, the trial court must have concluded the attorneys had apparent authority to do so.

Unfortunately, as this Court has noted, Missouri cases discussing the authority of an attorney to bind his client to a settlement agreement "often contain language which is ambiguous and conflicting, in some instances contradicting the general law of agency." *Leffler v. Bi-State Development Agency*, 612 S.W.2d 835, 837 (Mo. App.1981). This, we believe, stems primarily from a failure to properly distinguish

1. The Restatement's inclusive definition of "authority" is:
   'Authority' ... is the power of the agent to do an act or to conduct a transaction on account of the principal which, with respect to the principal, he is privileged to do because of the principal's manifestations to him. .... (Comment a)
   ....
   The manifestation may be made by words or other conduct, including acquiescence. (Comment c).

2. "It is possible for a principal to specify minutely what the agent is to do. To the extent that he does this, the agent may be said to have

express authority. But most authority is created by implication. .... . [Those powers] implied or inferred from the words used, from customs and from the relations of the parties ... are described as 'implied authority'." Restatement Second of Agency, § 7, Comment (c) 1958.

"All language requires interpretation in light of usages and other circumstances. Where the language [of the principal] is not specific, more interpretation is required than where it is specific. That is the only difference between express and implied authority." Seavey, *Agency*, § 8, p. 12 (1964).

between implied and apparent authority in determining whether an attorney's act is authorized. Whatever the reason for the confusion, this Court distilled the following rule for defining the authority of an attorney in those cases in which the attorney entered into settlement negotiations on behalf of his client:

> Where it is shown that a party's attorney of record 'represented ... he had such authority [from the client] and ... did reach an agreement with [the other party's] counsel to settle....', then 'it was incumbent upon [the party] to prove to the trial court that [his] attorney lacked authority to settle the case, since his act of settling ... is presumed prima facie to be authorized.' *Leffler v. Bi-State Development Agency*, 612 S.W.2d at 837.

This rule, the Court believed, complemented rather than contradicted the rule that no implied authority to settle a claim arises from the mere fact of an attorney's employment. For, in *Leffler*, the Court noted: "plaintiff's attorney did not purport to accept defendant's settlement offer on the mere basis of his employment; rather he stated that *his client had agreed* to accept the offer." (emphasis theirs) *Id.* at 837. Moreover, the Court stated the express representation by an attorney that his client has agreed to settle creates the "presumption of express authority" to do so. *Id.* 837.

We could distinguish the present case from *Leffler* on its facts. Here, according to Hogg, Snellson's witness, neither Tidlund or Griffiths expressly stated he had authority to settle the Bartons' claim or expressly stated the Bartons' accepted any of Hogg's offers, particularly, his $3,000.00 offer. Thus, there would be no presumption that either Tidlund or Griffiths had authority to settle the Bartons' claim for $3,000.00. Without this presumption, Hogg's testimony would be insufficient to carry Snellson's burden of proving the attorneys had authority to settle.

We decline to distinguish this case from *Leffler*. The difference between an attorney expressly stating he has authority to settle a claim and his negotiating as if he did, without saying so, is miniscule at best. More important, the reasonable impressions created by the attorney's conduct in each instance do not differ. Thus, if *Leffler* is correct, the conduct of Tidlund and Griffiths here created the presumption that they, the attorneys for the Bartons, had express authority to bind the Bartons to the settlement agreement.

■ We question the propriety of the rule distilled by *Leffler*. It is inconsistent with basic agency principles. The rule permits an attorney to create a presumption he has express authority to dispose of his client's substantive rights, when he may have no authority to do so. Express authority focuses on the relationship between the principal and agent. We look to see if the principal has given the agent specific instructions. *E.g. Hyken, supra.* An agent's representations to a third party are irrelevant to the existence of express authority, and such representations cannot establish the fact or scope of an agent's authority. *See, e.g., M.F.A. Cooperative Ass'n of Mansfield v. Murray*, 365 S.W.2d 279, 283 (Mo.App.1963).

■ The *Leffler* rule is also at odds with the particularized agency rules pertaining to the attorney-client relationship. The attorney must have express authority from the client to settle a case and no implied authority to settle arises from the mere fact of his employment. *Robinson, supra; Sudekum, supra.* These limits on attorney authority are meaningless if they can be circumvented merely by an attorney's representations he has such authority.

Admittedly, one could argue the issue here is apparent authority and, thus, *Leffler* is not controlling. As noted, however, apparent authority focuses on a third person to determine whether he could reasonably believe from the conduct of the principal that the agent has the authority to commit the act in question for the principal. *Wynn, supra.* We find no basis for a third person to reasonably believe an attorney has the final authority to settle a claim just because he negotiates with the third party as Tidlund and Griffiths did here. No client perceives or understands this when

he hires an attorney; nor should those who deal with the attorney reasonably believe the contrary.

The authority of an attorney to dispose of procedural matters in processing a case may have to be implied to keep the normal court processes from being bogged down. The same need does not exist in disposing of the client's substantive rights.

Despite our concerns, *Leffler* is the position adopted by this Court. We are constrained to follow it. The conduct and statements of Tidlund and Griffiths raise the same presumption raised in *Leffler*. The burden was on the Bartons to rebut the presumption. The trial court, however, was free to disbelieve the testimony on their behalf. *Hayes v. Reynolds*, 579 S.W.2d 119, 120 (Mo.App.1979). Apparently, it chose to do so.

Judgment affirmed.

CRIST and KELLY, JJ., concur.