David GLASS;  Appellee;

v.

Jake R. KIRKLAND;  Patricia
A. Kirkland;  Appellants.

David GLASS;  Appellant;

v.

Jake R. KIRKLAND;  Patricia
A. Kirkland;  Appellees.

Nos. 93–3597, 93–4042.

United States Court of Appeals,
Eighth Circuit.

Submitted May 9, 1994.

Decided July 14, 1994.

---

Stuart Helm King, Springfield, MO, argued, for appellants.

Ransom A. Ellis, III, Springfield, MO, argued (Lester J. Boyle, on the brief), for appellee.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

HEANEY, Senior Circuit Judge.

Jake R. Kirkland and Patricia A. Kirkland appeal an order of specific performance of a contract to sell real estate to David Glass. The district court found that partial performance of the oral sales contract removed it from the Statute of Frauds. Glass cross-appeals the district court's dismissal of his claim for damage to the land. We affirm the order of specific performance of the real estate contract and reverse the dismissal of Glass's damages claim and remand for consideration of that issue.

This dispute arises out of competing claims for a tract of land in Taney County, Missouri, that was owned by the Kirklands. The Kirklands had a written contract with Resorts Management, Inc., ("RMI") to sell RMI the disputed land for $450,000, after which RMI would subdivide the property and the Kirklands would be permitted to reserve a lot within the subdivision. RMI thereafter entered into a written contract to sell Glass the land for $650,000. There was nothing in Glass's contract about subdividing the land or reserving a lot for the Kirklands. Glass's

contract provided for conveyance of clear title to the entire property, including a one-acre triangle of land to which the Kirklands lacked clear title and which was not part of their own contract with RMI.

Before either contract closed, RMI went into bankruptcy proceedings, and the contracts became part of the bankruptcy estate. The Kirklands claimed that their contract with RMI was void because the bankruptcy trustee had failed to attend a scheduled closing on the property. The trustee took the position that the contract was valid. Glass claimed that he had an enforceable contract to buy the land from the trustee. Another party offered to buy the land from the estate for $525,000.

The Kirklands retained attorney Ralph Hunt to represent them in the dispute over the land. Glass was represented by attorney Jerry Dossey, who was later joined by Ransom Ellis. Eventually the parties appeared to reach an agreement settling their disputes with the trustee. Under the agreement, the Kirklands would pay the trustee $50,000 as well as return the $10,000 earnest money that RMI had paid them. The trustee, in turn, would return to Glass the $25,000 earnest money he had paid to buy the land from now-bankrupt RMI, and Glass would waive any contract claim against the trustee. On September 15, 1992, attorneys Hunt, Ellis, and Dossey appeared at a bankruptcy court hearing and supported the trustee's motion to approve the settlement, and the bankruptcy judge issued an order approving these terms. In addition, Glass asserts that as an adjunct to the settlement he and the Kirklands had an oral contract to sell him the property for $650,000, and that he partially performed this contract at the bankruptcy hearing when he agreed to the order whereby his earnest money was returned and he relinquished his right to pursue enforcement of his contract to buy the land from the trustee.

One day after the bankruptcy hearing Hunt informed Glass that the Kirklands did not intend to sell him the land, and Glass sued for specific performance of the contract. Several months later Glass amended his complaint to add a claim for damage to the land

from the clearing of trees, other vegetation, and soil. Glass's action for specific performance was tried separately from the damages claim before the district court judge and an advisory jury. *See* Fed.R.Civ.P. 39(c). The advisory jury found in Glass's favor, and the district court agreed and entered judgment for Glass. The court then dismissed without explanation his claim for damages. The Kirklands appeal the order for specific performance, contending that enforcement of the contract is barred by the Statute of Frauds because there was no written contract to sell the land and no oral contract that was partially performed by Glass, nor was there written authorization for attorney Hunt to agree to sell the land as part of the settlement with the bankruptcy trustee. Glass cross-appeals the dismissal of his damages claim.

## I.

■ Under Missouri's Statute of Frauds, a contract for the sale of land must be in writing and signed by the party against whom the contract is to be enforced. Mo. Rev.Stat. § 432.010. Despite these strict terms, however, equity will enforce an oral contract to convey real estate where one party has partially performed or has done other acts in reliance on the contract and thereby has changed position so materially that to invoke the statute would constitute a gross injustice. *Sappington v. Miller*, 821 S.W.2d 901, 903–04 (Mo.Ct.App.1992); *see also Jones v. Linder*, 247 S.W.2d 817, 819–20 (Mo.1952). The Statute of Frauds also states that the authority of an agent to enter into a real estate contract must be in writing. Mo. Rev.Stat. § 432.010.

■ A party seeking enforcement of an oral contract must prove the existence and terms of the contract by clear and convincing evidence. *Webb v. Webb*, 498 S.W.2d 757, 758 (Mo.1973). The district court found that the bankruptcy trustee had agreed to release the Kirklands from their contract to sell the land to the trustee for $450,000, upon a payment of $60,000 to the trustee and with the understanding that the Kirklands could then sell the land to Glass for $650,000. III. Tr. 61. It also found that Glass gave up his

contract with the trustee in reliance on the Kirklands' promise to sell him the land. *Id.* The district court thus concluded that Glass and the Kirklands had an oral contract and that Glass's relinquishment of contract rights against the trustee constituted partial performance of the contract so as to remove it from the operation of the Statute of Frauds. *Id.* at 62. The district court's findings will not be set aside unless clearly erroneous, and due regard shall be given to the court's opportunity to judge the credibility of the witnesses. Fed.R.Civ.P. 52(a).

The Kirklands raise two main arguments to challenge the district court's order for specific performance: first, that there was no oral contract or partial performance thereof, and second, that attorney Hunt was not authorized to settle the dispute by agreeing to sell the land to Glass. We agree with the district court that Hunt did possess authority to sell the land as part of the settlement of the dispute with the trustee, and that there was in fact an oral contract to sell the land to Glass that is binding on the Kirklands.

■ We first address the threshold issue of whether attorney Hunt possessed the authority to enter into an oral agreement to sell the land to Glass. Under Missouri law an attorney is presumed to have the authority to settle a case if the attorney expressly states he has such authority or negotiates as though he does. *Barton v. Snellson,* 735 S.W.2d 160, 163 (Mo.Ct.App.1987); *Leffler v. Bi–State Dev. Agency,* 612 S.W.2d 835, 837 (Mo.Ct. App.1981). The Kirklands bore the burden of rebutting this presumption, and the district court was free to disbelieve the testimony that Hunt lacked such authority. *See Barton,* 735 S.W.2d at 164.

■ We agree with the district court that Hunt possessed authority to work out a settlement over the disputed land that included selling it to Glass. First, Hunt testified that he represented both Mr. and Mrs. Kirkland in this dispute. II Tr. 6–7, 49, 94. Both Kirklands signed the original contract to sell the land to RMI as well as the petition to quiet title on the triangular piece of land. Kirkland App. Vol. 2 at 273, 282. Although there is no testimony that Hunt expressly represented to Glass or his attorney, Dossey,

that he had authority to settle the dispute, there is ample indication in the record that Hunt's conduct during settlement talks led the trustee and Dossey to believe that Hunt was authorized to settle the dispute on the Kirklands' behalf, including selling the property to Glass. The Kirklands retained Hunt for the specific purpose of resolving the problems that arose with the real estate contract when RMI went into bankruptcy. II Tr. 6–7. There were never any direct contacts between the Kirklands and Glass. Hunt never indicated to the trustee, Dossey, or the bankruptcy court that he was not authorized to reach a settlement, and the record shows that Hunt had many conversations with Dossey and the trustee in which he actively sought to settle the dispute. The district court credited the testimony that supported a determination that Hunt possessed settlement authority. In light of the testimony and the record showing the circumstances of the negotiations leading up to the bankruptcy hearing, we agree that the Kirklands failed to rebut Hunt's presumed settlement authority in this case.

■ We next address whether the district court erred in holding that an oral contract existed and was partly performed by Glass so as to take it out of the Statute of Frauds. We agree with the district court's conclusion and order of specific performance. A great deal of contradictory evidence was presented to the district court. In particular there was testimony on both sides that some of the written correspondence on its face may not be completely reliable as an indication of the status of any oral contract. For example, Hunt's August 18, 1992, letter to the trustee states that "Kirkland will then sell the property to David Glass, which I presume will settle any claim that Glass might have for nonperformance of his contract with Resorts Management, Inc." Kirkland App. Vol. 2 at 200. But Hunt testified that such language did not mean that an offer had been made to Glass but rather merely reflected Hunt's assumption at that time that the trustee would require a sale to Glass as part of any settlement. II Tr. 86. Likewise, Hunt's August 26, 1992, letter to the trustee, which stated that there was currently *no* contract with

Glass, was addressed by the testimony of attorney Dossey. Dossey stated that after he received a copy of this letter, he immediately telephoned Hunt, who confirmed the settlement offer to sell the property to Glass once it was out of bankruptcy. I Tr. 167. Indeed, that same August 26 letter stated that "an integral part of [the proposed settlement] was that we would deal with Glass," and noted that "Mr. Kirkland is seriously considering withdrawing the offer of settlement, since it appears to be anything but a speedy settlement." Kirkland App. Vol. 2 at 268. Shortly thereafter Glass, through his attorneys, agreed at the September 15 bankruptcy hearing to accept the return of his earnest money and to relinquish any contract rights to buy the property from the trustee. After the hearing, according to Dossey, he and Hunt discussed closing the sale in two weeks, by which time the action to quiet title in the one-acre triangle would be completed. I. Tr. 184.

Dossey testified that certain representations by himself and by Hunt in correspondence and even at the bankruptcy hearing to the effect that there was no separate contract for the Kirklands to sell the property to Glass simply meant that there was no outside deal that would circumvent the bankruptcy trustee or divert money from the bankruptcy estate. I Tr. 179. In other words, the only agreement between the parties was the one they were openly discussing to settle the whole dispute with the trustee's involvement and approval. *Id.*

The advisory jury and the district court evaluated the conflicting evidence and resolved any contradictions or inconsistencies in favor of Glass. Examination of the whole record reveals evidence—consisting of testimony, correspondence, and contemporaneous notes—of several conversations in which Hunt conveyed the promise that the Kirklands would sell the land to Glass once it was freed from bankruptcy proceedings. There is also clear evidence of the specific terms of the contract. Glass's original contract with RMI included the entire tract of land, including the one-acre triangle, with no subdivision of the property or reservation of a lot by the seller. There was never any indication that

Glass would purchase the property on terms other than those. The settlement proposals put forth by Hunt did not mention any reservation of a lot, and the title problem concerning the one-acre triangle—which was not part of the Kirklands' original contract to sell to RMI—was addressed when the Kirklands filed a quiet title action. We thus agree with the district court that an oral agreement was reached for the Kirklands to sell the Taney County property to Glass as part of the settlement with the bankruptcy trustee.

We further conclude that Glass's agreement at the September 15 bankruptcy hearing to accept the return of his earnest money from RMI and to forfeit his right to seek enforcement of his contract to buy the land from the trustee constituted partial performance of the contract so as to remove it from the operation of the Statute of Frauds. The record leaves no doubt that Glass relied on Hunt's representations that the Kirklands would sell him the property as soon as it was released from bankruptcy. The testimony of Glass and attorney Dossey, as well as written correspondence, is consistent throughout that Glass's only interest was in buying the land, either from the Kirklands as part of the settlement or by taking legal action against the trustee to enforce his original contract with RMI. There was never any suggestion that Glass would walk away from the property simply to avoid additional litigation expenses. By relinquishing any rights he had against the trustee, Glass so materially changed his position that it would be a "gross injustice" to allow the Kirklands to invoke the Statute of Frauds to bar enforcement of the oral agreement. *See Sappington,* 821 S.W.2d at 903–04. We therefore affirm the district court's order of specific performance of the oral contract.

## II.

Glass cross-appeals the district court's dismissal of his claim for damages for trespass and waste of the land. Several months after Glass instituted his action for specific performance of the real estate contract, he discovered that the Kirklands had begun to clear and remove trees and other vegetation, rocks, and soil on the disputed tract of land,

and Glass sought an injunction to halt any further alteration of the property. The parties thereafter stipulated to a court order prohibiting the Kirklands from further developing the property. Kirkland App. Vol. 1 at 31–34. Glass was also granted leave to amend his complaint against the Kirklands to add damage claims for trespass and waste. After the separate trial of the specific performance action concluded in Glass's favor, the district court without explanation granted the Kirklands' motion to dismiss Glass's claims for trespass and waste. III Tr. 59.

Although we do not know the basis on which the district court ruled, the Kirklands argued in their motion to dismiss that Glass's claims must fail because the "part performance" exception to the Statute of Frauds only applies to actions in equity and cannot support actions at law such as trespass and waste. Kirkland App. Vol. 1 at 91–92. We reject this reasoning, however, because Glass's claim for damage to the trees and land is not dependent on or referable to the part performance doctrine that was asserted in the equitable action for specific performance. The damages claim is a separate action seeking to remedy a separate wrong.

We next address the nature of Glass's claim for damages. He asserts that his damage claim sounds in trespass and in waste. The distinction between those two actions, however, lies in who has possession of the land and who has committed the damage. Waste involves a *wrongdoer* who has rightful possession of the land but who has less than a fee simple interest in it, while trespass involves a wrongdoer who comes onto land that is in the possession of *someone else*. In Missouri an action for waste may be brought, for example, by a landlord against a tenant or an heir against a life tenant—by someone "who has the remainder or reversion in fee simple, after an intervening estate for life or years, and also by one who has a remainder or reversion for life or years only." Mo.Ann. Stat. § 537.430. In our case, Glass was buying from the Kirklands the entire estate in fee simple. Because Glass does not satisfy the statutory definition of who may maintain an action for waste, this claim was properly dismissed by the district court.

We conclude, however, that Glass may maintain an action for trespass. A person bringing an action in trespass bears the burden of proving actual or constructive possession of the property. *Jaycox v. E.M. Harris Bldg. Co.*, 754 S.W.2d 931, 933 (Mo. Ct.App.1988). A buyer of property is entitled to possession as of the date he makes a proper tender of performance. *Baker v. McCue–Moyle Dev. Co.*, 695 S.W.2d 906, 914 (Mo.Ct.App.1984). Glass's formal tender occurred on September 22, 1992, when he filed a petition for specific performance of the real estate contract indicating his readiness to perform his part of the contract. *See id.* at 913 (citing *Cooper v. Mayer*, 312 S.W.2d 127, 130 (Mo.1958)). The damage to the trees and other alteration of the land allegedly occurred between July 20 and August 24, 1993, several months after Glass instituted the action for specific performance. Kirkland App. Vol. 2 at 167, ¶ 35. We therefore conclude that Glass had possession of the property so as to be able to bring an action for damages from the trespass to the land.

For the foregoing reasons, we affirm the district court's order for specific performance of the real estate contract and reverse the dismissal of Glass's damage claim and remand to the district court for consideration of that issue.