258 S.W.2d 16 (1953)
BAKER
v.
ATKINS et al.
No. 21690.
Kansas City Court of Appeals. Missouri.
May 4, 1953.
*18 Richard K. Phelps, Kansas City (Thice & Phelps, Kansas City, of counsel), for appellant.
Cliff Bailey, Kansas City, for respondent.
BOUR, Commissioner.
Plaintiff brought this action to recover actual and punitive damages for alleged fraud in the sale of an automobile by defendant to plaintiff. The issue of actual damages was submitted to the jury, but the court refused to give plaintiff's instruction on punitive damages; and the jury returned a verdict for $450. From the judgment, defendant has appealed.
The case was tried upon an amended petition which was drawn in two counts. In count one plaintiff alleged that defendant was engaged in operating an automobile sales business, under the name of Midway Motor Company, in Kansas City, Missouri; that on April 19, 1948, plaintiff bought from defendant a Ford club coupe for which he paid defendant the sum of $2100; that at and prior to the time of the sale defendant, his agents and employees represented to plaintiff that said automobile was a 1948 model; that said representations were false and fraudulent; that in truth and in fact the automobile was not a 1948 model but was a 1947 model; that said representations were made by defendant, his agents and employees knowing they were false, or in utter disregard of the truth, for the purpose of inducing plaintiff to purchase the automobile; that plaintiff relied on said representations and purchased the automobile, and at the time of the sale its reasonable market value was $1565; that as a direct result of the false representations of defendant, his agents and employees, plaintiff suffered actual damages in the sum of $535, for which he prayed judgment. In count two of the petition, plaintiff adopted by reference all of the allegations in count one; alleged that said representations were made willfully, wrongfully, fraudulently, and maliciously; and prayed judgment for $2000 punitive damages.
In his answer, defendant admitted that he was engaged in operating an automobile sales business in Kansas City, Missouri, and that he was so engaged at all times mentioned in the petition; admitted that the sale price of the automobile in question was $2100; and denied all other allegations in the petition.
The following facts are undisputed: Plaintiff is a barber. On April 18, 1948, he went to defendant's used car lot where defendant's salesman showed him a Ford club coupe, bearing motor number 71GA-414110, and told him the car was a 1948 model. Plaintiff bought the car for $2100, and when the sale was completed on April 19, 1948, he was given a "Car Invoice" *19 (plaintiff's exhibit 2), which described the car as a "Used 1948 Ford Club Coupe, Motor No. 71GA-414110," and showed the price to be $2100.
Plaintiff testified on direct examination that when he saw the car at defendant's place of business it "looked like a new '48," and the speedometer registered "90 to 100 miles"; that he bought the car in reliance upon the representation of defendant's salesman that it was a 1948 model; that after driving the car about six months he sold it to Mr. Lieman "as a 1948 model"; that he thought the car was a 1948 model when he sold it; and continued: "Q. I will ask you, after the sale of this car did it come to your knowledge that this was a 1947 car? A. Yes." Other evidence will be stated in the course of the opinion.
The first point raised by defendant-appellant is that the court erred in overruling his motion for a directed verdict. In support of this contention defendant states that "from plaintiff's own testimony, in this case, it appears that all through his ownership of the car he treated it as a 1948 yearly model, and that when he in turn sold it, he sold it as a 1948 yearly model"; that "having bought it as a 1948 model and sold it as the same he certainly has no right to assert that he was in any degree damaged, and all testimony as to difference in value between a 1947 and 1948 model is wholly immaterial." This argument is followed by a quotation from Walsh v. Walsh, 285 Mo. 181, 205, 226 S.W. 236, 242, which reads: "But the burden of proving the fraud or conspiracy charged against the defendant * * * is upon the plaintiffs. They must make out their case against him by clear and convincing evidence. * * * Fraud is never presumed; and, while it may be proved by circumstantial evidence, if the transaction relied upon to prove fraud is as consistent with honesty and good faith as with a fraudulent purpose, it will be referred to the better motive." Defendant then cites nineteen other cases, and concludes: "The cases could be multiplied indefinitely. From all of these authorities, it is clear from reading the record in this case that respondent failed utterly in sustaining the burden of proof which the law imposes upon him." There is no similarity between the facts in the cases cited and the facts in the instant case.
We confess that we do not understand defendant's argument in support of his first allegation of error. If defendant means that plaintiff was not entitled to recover in this action because he sold the car to Lieman for an amount equal to or greater than the price he paid defendant, the contention is without merit. The general rule is that a person acquiring property by virtue of a commercial transaction, who has been defrauded by false representations as to quality, condition or other matters relating to the value of the property acquired and retained, may recover as damages in a tort action "the difference between the value of the property as represented and the actual value of the property at the time of sale; and it is also true that this rule enables the purchaser to recover the so-called `benefit of his bargain'. * * * It follows that a resale by the purchaser, even at a price which enables him to realize an over-all profit on the transaction, does not affect the measure of damages, i. e., damages are not decreased because of a subsequent advantageous disposition." Louis Steinbaum Real Estate Co. v. Maltz, Mo.Sup., 247 S.W.2d 652, 655. See also Dolan v. Rabenberg, 360 Mo. 858, 231 S.W.2d 150, 155, and cases cited. Furthermore, there is no evidence in the record to show the amount of money plaintiff received for the car when he sold it to Lieman. Plaintiff testified that after he sold the car to Lieman, he "was sued." The record also shows that when plaintiff's counsel requested him to "state to the jury the final amount of money you received from the sale of this car," counsel for defendant said: "I object to that as immaterial, not tending to prove any issue in the case," and the objection was sustained. Obviously, the mere fact that plaintiff testified that he sold the car "as a 1948 model" does not show that he "failed utterly in sustaining the burden of proof which the law imposes upon him." As indicated above, the cases cited by defendant *20 do not support the statement in his brief that since plaintiff sold the car as a 1948 model, he has no right "to assert that he was in any degree damaged."
For his second point, defendant asserts that "incompetent, irrelevant and material testimony was received by the court over the objection of the defendant." Under this assignment, defendant argues that the court erred in admitting certain testimony of plaintiff's witness Lawrey in regard to the model of the car in question. Lawrey testified that for more than three years he had been employed as a salesman by Kansas Motors, Inc., a Ford agency, and during that period had sold several hundred cars; that motors manufactured by the Ford Motor Company "bear a motor number" and "that motor number is to designate the year and the type engine that the automobile has"; that "we have a guide to go by in determining whether such and such a motor number belongs to such and such a car;" that the guide "is accepted by all authorized dealers" and "is called the Red Book"; that he had used the Red Pook "for quite awhile"; that he had never found any mistakes in the book, and did not know of any one who had.
Lawrey was allowed to testify on direct examination, and over defendant's objections, that the Red Book showed the motor number of the car in question (71GA-414110) was a motor number assigned by the Ford Company to a very late 1947 model and not to a 1948 model. Before the witness gave this testimony, counsel for defendant examined him on "voir dire" as follows:
"Q. You say you do know from these motor numbers to what yearly model the car belongs? A. Yes, sir.
"Q. Do you know from your own knowledge or from the guide you spoke of a moment ago? A. My authority would come out of the guide. * * *
"Q. You have to make reference to the guide to tell, don't you? A. To be absolutely positive." Defendant's counsel then objected that testimony based upon the Red Book would be hearsay and not the best evidence, but as indicated the objection was overruled.
As stated in Wigmore on Evidence, Vol. VI, sec. 1766, (3d Ed.), "the theory of the hearsay rule is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made on the stand, subject to the test of cross-examination." The general rule which excludes hearsay as evidence applies to written as well as oral statements. In other words, a writing may be hearsay and inadmissible as such unless an exception to the hearsay rule renders it admissible. 20 Am.Jur., Evidence, sec. 455, p. 403. And it is elementary that where proof is to be made of some fact which is stated in a writing, the best evidence of the contents of the writing is the writing itself. Hence the contents of a writing may not, as a general rule, be proved by parol, unless the failure to produce the writing is accounted for and excused. Id. sec. 406, p. 366; Miller v. John Hancock Mut. Life Ins. Co., Mo.App., 155 S.W.2d 324, 326. It is to be noted, however, that the hearsay rule may operate to render inadmissible testimony offered to prove the contents of a writing not produced at the trial. 20 Am. Jur., Evidence, sec. 455, p. 403.
As a general rule a book or other publication printed by a private person or organization is not admissible as evidence of the truth of the facts stated therein. However, in almost every organized occupation there are handbooks and other publications, containing information of every day professional and business need, intended to be circulated publicly and consulted by persons interested, tested by their use, and found by their experience to be trustworthy and actually relied upon in the work of the occupation. Such publications are generally conceded to be admissible under an exception to the hearsay rule that has never been precisely formulated. They include trade journals reporting prices current, certain commercial and professional lists, registers, reports, business directories, and the like. 32 C.J.S., Evidence, § 717, p. 626; 20 Am. Jur., Evidence, sec. 964 et seq., pp. 812-825; Wigmore on Evidence, Vol. VI, secs. 1702, *21 1706 (3d. Ed.) It is generally considered necessary, as a prerequisite to the introduction in evidence of such publications, that a preliminary foundation be laid for such evidence, as by showing that such publications are based upon reliable sources of information or that they have been regularly prepared for the use of the trade or profession and are generally regarded as trustworthy and relied upon. In this connection see Howell v. Hines, 298 Mo. 282, 249 S. W. 924; Meriwether v. Quincy, O. & K. C. R. Co., 128 Mo.App. 647, 107 S.W. 434; Fountain v. Wabash R. Co., 114 Mo.App. 676, 90 S.W. 393.
In the instant case, the court should have sustained defendant's objection to Lawrey's testimony, not only for the reason that it was not the best evidence of the contents of the Red Book in question, but also because it was hearsay. Even if the book had been formally offered in evidence at that time, it should not have been admitted over objection, since plaintiff had not introduced sufficient preliminary evidence to justify the court in admitting it under the exception to the hearsay rule mentioned above. It is clear, however, that the court's ruling was not prejudicial error. Defendant testified on cross-examination that he "checked the Red Book" after this suit was filed and it "stated that motor number (71GA-414110) was a late '47." When asked whether he "went by the Red Book," he said, "I use the Red Book as a guide, yes." The record then reads as follows: "(The Red Book was marked `Plaintiff's Exhibit No. 4,' for identification.)
"Q. I show you (defendant) this and ask you if that is a record of 1947 models, in which the engine numbers are set out, in this Red Book? A. The Red Book shows that; yes, sir.
"Q. Now, I will ask you to check with reference to 71GA-414110 and state what year model you find that in? A. The Red Book says up to 414366 * * *.
"According to the Red Book, it would be 1947." Since defendant so testified after examining plaintiff's exhibit 4, the exhibit was in evidence under the rule in this state, although not formally introduced. Godsy v. Thompson, 352 Mo. 681, 179 S.W.2d 44, 48; Charles v. Patch, 87 Mo. 450, 467; Missouri Interstate Paper Co. v. Gresham, 233 Mo.App. 5, 116 S.W.2d 228, 232. This answers defendant's argument that "the book" was never "in evidence."
Defendant further testified on cross-examination:
"Q. You do believe the Red Book, don't you? A. The Red Book is a good guide.
"Q. If the Red Book shows that model to have been discontinued November 1, 1947, you would believe that? A. The chances are I would take the Red Book's word on it, yes. * * *
"Q. Of your own knowledge you know the serial number of a 1948 car was entirely foreign and different from the serial number of a 1947 car, don't you? A. That's right.
"Q. Of your own knowledge you know there were no 414 series in 1948 models, don't you? A. In accordance with the guide.
"Q. Did you know that when you bought the car? A. Had I checked the Red Book I would have known that."
On re-direct examination, defendant testified that the Red Book was prepared by "an organization made up of National Used CarNational Automobile Dealers. They send out lists to determine the car sales and other things." He further stated that he had never found a mistake in the Red Book "as to motor numbers," but did not use the book "too much." Defendant's witness Holland, car manager for a Ford Agency, testified on cross-examination that all automobile dealers used the Red Book "more or less" to determine the market value of cars. McCrosky, a witness for defendant, had been in the automobile business about seven years. He said he referred to the Red Book "a good deal"; that "dealers generally use the Red Book for the purpose of determining the price they are willing to allow"; that he used the book for this purpose, but did not use it "otherwise" unless he was "suspicious of the car."
While the court erred in admitting that part of Lawrey's testimony *22 objected to by defendant, the error could not have been harmful, because defendant's own testimony was to the same effect. Defendant gave the testimony set forth above without objecting to the questions asked by plaintiff's counsel. Furthermore, it appears from the testimony of defendant and his witness that the Red Book was prepared and circulated by a national association of automobile dealers; that the book was in general use among automobile dealers; and that it was a good guide. Defendant stated that he had never found any errors in the book; and in response to a question, he said: "The chances are I would take the Red Book's word for it, yes." Lawrey said the book was used and "accepted by all authorized dealers," and he had never found any errors in it. We think there was sufficient competent evidence from which the jury could reasonably have found that the car in question was a 1947 model. Defendant relies upon Brown v. Republic Casualty & Surety Co., Mo.App., 31 S.W.2d 111, and Wisconsin & Arkansas Lumber Co. v. Buschow Lumber Co., Mo.App., 236 S.W. 410, but those cases are distinguishable on the facts.
Defendant, in his brief, states that plaintiff's counsel "undertook to elicit from (Lawrey) the difference between the reasonable market value of a 1947 yearly model Ford and a 1948 model"; that such testimony "entirely ignored the long-established definition of `market value'" and was based upon hearsay. Defendant has not seen fit to cite any authorities in support of his contention or to develop and explain the contention, and for the purpose of this appeal it is deemed to have been abandoned.
Defendant in his argument contends that "the court attempted to help plaintiff make a submissible case" and "this was error on the part of the court." To sustain this contention defendant sets out certain testimony of plaintiff's witness, Paul Lawrey. We need not quote that part of the record, but will say it consists of questions asked by the trial judge and the answers of the witness. Under the record as made we are not required to consider defendant's contention that the trial judge erred in questioning the witness; for the matter complained of was not mentioned in the motion for a new trial. Supreme Court Rule 3.23, and section 510.210, RSMo 1949, V.A.M.S. Furthermore, no such allegation of error appears in defendant's brief under "Points and Authorities." A point is not properly presented for review if advanced for the first time in the argument. Supreme Court Rule 1.08; Jones v. Giannola, Mo.App., 252 S.W.2d 660, 663, and cases cited. We have, however, read the questions asked by the trial judge and the answers of the witness Lawrey. In our opinion the conduct of the trial judge was not such as to call for review under Supreme Court Rule 3.27.
The next assignment in defendant's brief reads as follows: "The plaintiff failed to establish all of the essential elements of his claimed cause of action against the defendant." In support of this contention, defendant again states that plaintiff failed to show by competent evidence that the car in question was a 1947 model; that "his only witness (Lawrey) testified that from the engine numbers in the Red Book the car must have been a very late 1947"; that "this testimony was hearsay and incompetent." Defendant then repeats the argument that plaintiff was not damaged because "he sold the car as a 1948 model." What we have said above disposes of all these arguments. Defendant further states that four of his witnesses testified the car in question was a 1948 model, and he refers to other evidence which he introduced. We must, of course, disregard defendant's evidence, unless it aids plaintiff's case, and consider only the evidence most favorable to plaintiff and the most favorable inferences arising therefrom. Trower v. Missouri-Kansas-Texas R. Co., 347 Mo. 900, 908, 149 S. W.2d 792, 795.
Defendant's last assignment is that "the verdict is fatally defective." As stated before, the petition was drawn in two counts. Plaintiff, in his first count, sought to recover actual damages; and in *23 count two, he prayed judgment for punitive damages. Section 509.200, RSMo 1949, V.A.M.S., provides that in actions where exemplary or punitive damages are recoverable, the petition shall state separately the amount of such damages; but there is no statute or rule that requires the claim for punitive damages to be stated in a separate count. While the petition in the instant case contained two so-called counts, it stated but one cause of action. See Baxter v. Magill, 127 Mo.App. 392, 397, 105 S.W. 679; Antonelli v. Basile, 93 Mo.App. 138; Johnson v. Bedford, 90 Mo. App. 43. Defendant's motions for directed verdict did not refer to the counts in the petition. After the court overruled the motion for a directed verdict at the close of all the evidence, plaintiff requested the court to give three instructions, numbered 1, 2, and 3. Instruction 1 was plaintiff's main instruction; instruction 2 dealt with the measure of actual damages to be awarded in the event of a finding for plaintiff; and instruction 3 authorized the jury to assess punitive damages in addition to actual damages upon a finding that false representations were made maliciously. The court gave instructions 1 and 2, but refused to give instruction 3. Instruction C, given by the court, dealt with the forms of verdict. The form for plaintiff's verdict was as follows: "We, the jury, find the issues for the plaintiff and do assess his damages at _____ dollars (Stating the amount.)" The jury returned a verdict for plaintiff, in this form, in the sum of $450. Thereafter, and upon motion of defendant, the trial judge directed a verdict for defendant on count two of the petition, wherein plaintiff prayed judgment for punitive damages.
As we understand defendant's argument he contends first that the verdict for $450 is defective because it does not state that it is a finding of actual damages; and that the court erred in directing a verdict on count two of the petition, after the jury returned its verdict for $450, without correcting or requiring the jury to correct the verdict so as to show that it is for actual damages only. It appears from the record that defendant made no objection to the forms submitted to the jury; that he did not object to form of the verdict when it was returned or when he requested the court to direct a verdict for defendant on count two of the petition; and that the motion for a new trial does not mention the verdict. In these circumstances, defendant is in no position to complain of the form of the verdict. Pleiman v. Belew, 360 Mo. 219, 222, 227 S.W.2d 733, 735; Kansas City v. Thomson, Mo. Sup., 208 S.W.2d 216, 217. Furthermore, the verdict in question is not "fatally defective" as defendant insists. Section 510.270, RSMo 1949, V.A.M.S., provides that "When exemplary or punitive damages are allowed by the jury, the amount thereof shall be separately stated in the verdict"; but this statute has no application here. Since the court submitted to the jury the issue of actual damages and refused to give plaintiff's instruction 3 on punitive damages, the only damages that could be assessed by the jury were compensatory. It is evident, therefore, that the verdict in question is for actual damages only. Cf. Courtney v. Blackwell, 150 Mo. 245, 51 S.W. 668; Dye v. Loewer, Mo.App., 94 S.W.2d 948. This point must be ruled against defendant.
The judgment should be affirmed, and the Commissioner so recommends.
SPERRY, C., concurs.
PER CURIAM.
The foregoing opinion of BOUR, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.