Charles CARROLL, d/b/a St. Louis Overhead Crane and Hoist Rebuilders, Appellant,

v.

Donald GHIDONI, Respondent.

No. 51784.

Missouri Court of Appeals, Eastern District, Division One.

April 28, 1987.

Motion for Rehearing and/or Transfer Denied June 2, 1987.

Shaw, Howlett & Schwartz, James Jay Knappenberger, Joseph Howlett, Clayton, for appellant.

Eisenstein, Smith & Burke, Thomas A. Burke, III, St. Charles, for respondent.

CRIST, Judge.

Appeal by plaintiff Carroll from the court's "Amended Order on Defendant's Motion to Compel Settlement" finding the parties had settled their case. We affirm.

A "business-love-arrangement" of the parties turned into "apparent-hate-separation." Plaintiff Carroll and defendant Ghidoni had been partners in a crane and hoist repairing business, but had a "falling-out." On May 1, 1979, Carroll filed suit against Ghidoni alleging a rupture of their business relationship. On May 11, 1979, the parties executed a "Stipulation and Agreement" setting out the rights and liabilities of the parties in the business and its assets. On April 24, 1980, Carroll filed a second petition alleging breach of the May 1979 agreement. Thereafter, the parties jockeyed for position. A list of some of the proceedings

leading up to Ghidoni's motion to compel settlement may be helpful:

6/6/80—Ghidoni moves for dismissal.

10/6/80—Carroll moves for consolidation (granted 10/30/80).

12/11/80—Carroll filed a motion for sanctions due to Ghidoni's failure to appear for his deposition.

12/29/80—Sanctions were denied; however, Carroll was awarded attorney fees and the court ordered Ghidoni's pleadings to be stricken if he failed to appear for depositions in the future.

1/30/81—Ghidoni's lawyer filed a motion to withdraw.

3/27/81—Carroll filed motion to require Ghidoni to answer certified questions.

4/10/81—Carroll's interrogatories directed to Ghidoni filed.

5/11/81—Carroll filed motion to strike Ghidoni's pleadings and for judgment by default.

5/20/81—Ghidoni's interrogatory answers filed.

6/1/81—Carroll filed certificate of readiness.

6/3/81—Ghidoni requested additional time for discovery.

8/12/81—Carroll filed certificate of readiness.

10/27/81—Carroll requested a continuance.

2/12/82—Carroll filed certificate of readiness.

2/19/82—Ghidoni filed certificate of readiness.

11/21/83—Carroll request cause be removed from dismissal docket.

12/6/83—Carroll filed certificate of readiness.

2/10/84—Carroll filed motion for continuance.

3/5/84—Carroll filed objections to Ghidoni's notice to take depositions.

3/12/84—Continuance ordered by the court.

3/15/84—Carroll's deposition taken on behalf of defendant.

8/28/84—Carroll filed certificate of readiness.

9/4/84—Ghidoni filed a certificate of nonreadiness.

4/9/85—Carroll filed certificate of readiness.

7/3/85—Ghidoni's lawyer filed a motion to withdraw on the ground Ghidoni would not communicate with him and had specifically requested his dismissal.

7/23/85—Cause called. Ghidoni and his lawyer appear, Carroll and his do not. Ghidoni's lawyer announced to the court that he and Carroll's lawyer had "agreed upon the calling of the case to pass it for settlement." Ghidoni, however, objected to the fact that the settlement agreement had not been signed by Carroll. The case was continued.

Throughout this same period the parties' lawyers were also attempting to reach an out-of-court settlement. Their correspondence included:

10/24/84—Letter by Carroll's lawyer to Ghidoni's lawyer stating: "[W]e have talked a number of times about trying to wrap this case up with mutual releases and dismissals.... [c]an't we please work a little harder to see if we can't wrap this thing up."

3/26/85—Letter by Carroll's lawyer to Ghidoni's lawyer suggesting settlement "as per our long pending settlement efforts."

6/11/85—Letter by Carroll's lawyer to Ghidoni's lawyer asking for an answer to previous communications in light of the trial being set for July 23, 1985.

7/12/85—Letter by Carroll's lawyer to Ghidoni's lawyer rejecting Ghidoni's counteroffer of settlement by mutual releases and dismissals, plus the payment of money to Ghidoni, but reaffirming their offer to settle on execution of the mutual releases.

7/16/85—Carroll's lawyer by letter to Ghidoni's lawyer forwarded an "original plus two copies of a proposed Release ... and a copy of Stipulation for Dismissal that I am having my client sign." Also included with the letter was a memorandum passing the case

for settlement, signed by Carroll's lawyer on behalf of Carroll, and to be filed by Ghidoni's lawyer.

On July 23, 1985, the "when something that cannot be stopped runs into something that cannot be moved" syndrome appeared to stifle the settlement. The case came on for hearing with Ghidoni appearing in person and with his lawyer. Believing the case had been passed for settlement, Carroll and his lawyer did not appear. Upon learning that Carroll was not present and had not yet signed the settlement document, Ghidoni refused to sign indicating he would not do so until Carroll signed it. Carroll's lawyer was contacted by the judge and Ghidoni's lawyer. After that conversation Ghidoni's lawyer stated on the record, "At this point ... the cause had been settled orally but had not been signed by either of the parties you [the court] got ahold of the other attorney and he's trying to get ahold of the other party to sign the document, which would resolve the case." Ghidoni's lawyer hand delivered the settlement documents, sent to him by Carroll's lawyer, to Carroll's lawyer's office for execution by Carroll. Carroll did not sign the document on July 23; however, on July 24, 1985, Ghidoni and his wife executed duplicate originals of the settlement documents. Carroll continued to refuse to sign the agreement.

On August 26, 1985, Ghidoni filed a motion to compel settlement. At the evidentiary hearing on May 29, 1986, the parties testified, their lawyers testified, and the correspondence of the lawyers regarding the settlement agreement was admitted into evidence. Based on the evidence at the hearing and the transcript of the court proceedings of July 23, 1985, the trial court entered its order adjudging the parties were bound by the agreement. In making its order the trial court found "said cause was in fact settled by the execution of mutual releases and dismissal of said cause, however, due to the lack of trust between the parties themselves there was an issue as to who would execute the documents first.... [and Ghidoni] did not repudiate the offer of settlement." The trial court concluded that when Ghidoni signed the agreement he accepted Carroll's settlement offer of mutual releases and that Carroll is now bound by his accepted offer. Accordingly, the parties were adjudged bound by the releases and Carroll's action for breach of the May 1979 agreement was ordered dismissed in accordance with the terms of the agreement.

■ Carroll asserts there was no binding agreement to settle. He argues first that Ghidoni's lawyer had no authority to bind Ghidoni to an agreement. The existence of the attorney-client relationship does not, without more, give a lawyer the authority to settle a case. *Southwestern Bell Tel. Co. v. Roussin*, 534 S.W.2d 273, 277[8] (Mo.App.1976). *Roussin* is distinguishable because, Ghidoni's lawyer did not deny he had authority to settle and Carroll's lawyer did not present evidence, at the hearing on the motion to compel settlement, that he believed Ghidoni's lawyer did not have authority to settle. Ghidoni's lawyer engaged in oral negotiations; rejected Carroll's first offer and presented a counteroffer requesting a monetary payment to Ghidoni in conjunction with the mutual releases; agreed to the mutual releases without money after the counteroffer was rejected; and appeared in court ready to pass the case for settlement. The course of conduct of Ghidoni's lawyer shows he had authority for his actions. *See Drysdale v. Estate of Drysdale*, 689 S.W.2d 67, 71[4] (Mo.App.1985); *Wenneker v. Frager*, 448 S.W.2d 932, 937[8] (Mo.App.1969).

■ Carroll next asserts, even if his lawyer had authority to make an offer either that offer was rejected by Ghidoni on July 23, 1985; or in the alternative, if there was an agreement, Ghidoni renounced it on July 23, 1985. Credibility is for the trial judge and we review for abuse of discretion. *Freshour v. Schuerenberg*, 495 S.W.2d 116, 118[5] (Mo.App.1973). The evidence supports the court's finding both the existence of an agreement and instead of a repudiation of that agreement, a lack of trust and a disagreement as to who would sign first.

Finding authority to make an offer, acceptance of that offer, and no repudiation we address Carroll's last argument. The agreement was not signed by Ghidoni until after the case was continued, the agreement has never been signed by or for Carroll, there was no in-court agreement to settle, and there was no stipulation signed by both sides that the case should be passed for settlement. A compromise agreement does not need to be in writing. *Landau v. St. Louis Public Service Co.*, 364 Mo. 1134, 273 S.W.2d 255, 257[1] (banc 1954); *Langley v. Langley*, 607 S.W.2d 211, 212[1] (Mo.App.1980). Relying on *Wenneker*, Carroll argues, however, an open court agreement to settle in conjunction with a stipulation to pass the cause for settlement, is necessary for the settlement agreement to be enforceable by a motion to compel. We read *Wenneker* as holding those elements are sufficient but not necessary. 448 S.W.2d at 935[1]. *Wenneker* further holds "a valid compromise and settlement is final, conclusive, and binding upon the parties." *Id.* at 935[2].

Carroll ought to be bound by the agreement where there was an agreement to settle; because of that agreement the trial date was allowed to pass; only a disagreement as to who would be the first to sign the documents prevented the technical act of signing necessary to dispose of the case on the record; Carroll's lawyer tendered a signed stipulation for dismissal to Ghidoni's lawyer along with the settlement agreement; and Ghidoni signed the settlement agreement without repudiating it.

Judgment affirmed.

SATZ, P.J., and KELLY, J., concur.