**Eleanor ROSENBLUM,
Plaintiff–Appellant,**

v.

**JACKS OR BETTER OF AMERICA
WEST INC., et al.,
Defendants–Respondents.**

No. 51392.

Missouri Court of Appeals,
Eastern District,
Division Five.

Jan. 19, 1988.

Motion for Rehearing and/or Transfer
Denied Feb. 11, 1988.

Application to Transfer Denied
March 15, 1988.

Mortimer A. Rosecan, Alan G. Kimbrell, St. Louis, for plaintiff-appellant.

Alan E. Popkin, Pat Lorraine Simons, Clayton, Timothy Francis Noelker, St. Louis, for defendants-respondents.

ROBERT H. DIERKER, Jr., Special Judge.

## I.

Appellant Eleanor Rosenblum sued respondents Jacks or Better and its owners (Robert Hannegan, Martin Kosberg, and William Bidwill) on two promissory notes. Jacks or Better pleaded fraud as a defense to Mrs. Rosenblum's claim and counterclaimed for damages by reason of the same fraud. On the eve of trial, the cause was settled, but the settlement later unraveled. A motion to enforce the settlement filed by plaintiff-appellant was denied. Upon the trial, the jury was permitted to consider the plea of fraud as a basis to deny recovery on the notes and also award damages on the counterclaim. The jury did both, awarding Jacks or Better $64,000 on the counterclaim. The trial court accordingly entered judgment in favor of Jacks or Better on Mrs. Rosenblum's claim and also on the counterclaim, and, on motion, awarded substantial attorney's fees to Jacks or Better.

We are advised that Mrs. Rosenblum has paid the judgment on the counterclaim ($64,000 plus interest). Nevertheless, she prosecutes this appeal, assigning as error (1) denial of her motion to enforce the settlement, which she contends was not lawfully rescinded by her attorney; (2) the submission to the jury of both the defense of fraud pleaded by Jacks or Better and also the counterclaim based on fraud; and (3) the award of attorney's fees. We affirm the order denying enforcement of the settlement. We reverse the judgment on Mrs. Rosenblum's claim on the promissory notes and remand for entry of judgment in her favor. We reverse and remand the judgment on the counterclaim for a new trial on the issues of damages only. Finally, we reverse the award of attorney's fees.

## II.

Mrs. Rosenblum owned and operated a jewelry manufacturing business known as Stange Company. In part through the agency of her husband, an attorney and close friend of the purchasers, she agreed that the assets of the business would be sold to Jacks or Better and its owners, Messrs. Hannegan and Kosberg. The sale was consummated, the assets were transferred, cash and certain notes were given in payment of the purchase price. On November 20, 1980, promissory notes then due were canceled and new notes were given by Jacks or Better and its owners (now including Mr. Bidwill) in their stead. These notes were payable to Mrs. Rosenblum on November 20, 1981. Before they became due, Jacks or Better and its owners discovered, as the jury was later to find, that Mrs. Rosenblum had misrepresented the profitability of Stange by manipulating the value of its inventory so as to grossly exaggerate the earnings of the business. Jacks or Better refused to pay the notes when due. Mrs. Rosenblum then filed suit seeking to recover the principal amount due on the notes, $249,600. Jacks or Better answered and counterclaimed, alleging fraud both as an affirmative defense and as the basis of a claim for damages.

The settlement negotiations in this case proceeded by counsel of the parties. The parties themselves never exchanged a word. Neither attorney inquired of the other the precise limits, if any, placed on him by his client. On the contrary, as befitting able and experienced counsel, each attorney proceeded on the assumption that his opposite number had whatever authority that was necessary to accept or reject a settlement. Several offers by Jacks or Better were summarily rejected by counsel for Mrs. Rosenblum. On one occasion, it appears that Mrs. Rosenblum knew of the rejection; but it does not appear that counsel for Jacks or Better knew or should have known that opposing counsel had consulted with his client before rejecting the offer. It was only when Jacks or Better offered $185,000 to settle the case that counsel for Mrs. Rosenblum indicated that he would not respond immediately, inferring that he would consult with his client before accepting or rejecting the offer. Even after doing so, and reporting that the offer was accepted, counsel for Mrs. Rosenblum proceeded to negotiate other important matters, such as a covenant not to compete on the part of Mrs. Rosenblum, without any appearance of further consultation with or instructions from his client. Thus, the trial court could have found, on this record, that counsel for Jacks or Better reasonably believed that counsel for Mrs. Rosenblum had full authority to negotiate a settlement, reject any proposal the attorney deemed unacceptable, and accept proposals on material issues as he saw fit.

As drafted by counsel for Jacks or Better, the settlement agreement in this case directed that Jacks or Better, upon execution of the settlement, provide a letter of credit to secure payment of the principal settlement sum of $185,000 within thirty days. After the draft agreement was reviewed by Mr. and Mrs. Rosenblum, with some "cosmetic" language changes, it was sent to Mr. Hannegan, who apparently had charge of the litigation for Jacks or Better and its owners. Several days later, on October 12, 1984, counsel for the respective parties conferred by telephone. Counsel for Mrs. Rosenblum was advised that there

was a difficulty in providing the letter of credit, and that Mr. Hannegan desired instead to guarantee personally that the $185,000 would be paid within twenty-one days rather than thirty, as called for in the draft. The following exchange transpired:

> I [Jacks or Better's counsel] recounted that conversation to Marty [Mrs. Rosenblum's counsel]. I told him that we had problems, that we could not get the letter of credit within seven days, but that I could get the money within 21 days. And I asked him if that would be acceptable.
>
> Q. What did Marty say?
>
> A. He said, "That is not acceptable." And I said—I was kind of nonplussed because—
>
> Q. Why were you nonplussed?
>
> A. Well, because of the way he said it. We had gone through all of this negotiation and all the upset and what have you. And I said, "Well, do you mean the settlement is off?"
>
> And he said, "That's exactly what I mean," as only Marty could say it.
>
> Q. Do you have a distinct recollection of that?
>
> A. Yes. And I was, again, nonplussed. I was at loss for—You know, it was a "a-buh, a-buh," kind of conversation. And I said, "All right. If that's it, that's it." And I hung up the phone, and that was the end of the conversation.
>
> I immediately picked up the phone, called Bob Hannegan and said, "Something weird just happened. I had a conversation with Rosecan and he's rejected the settlement. The whole deal's off and you've got a trial on your hands."

Several days later, counsel for Jacks or Better sent a letter to counsel for Mrs. Rosenblum, summarizing their conversation and indicating commencement of trial preparation. In the meantime, Mrs. Rosenblum's counsel reported to her concerning the October 12 conversation. Both Mrs. Rosenblum and her counsel insisted later that counsel had no authority to rescind the settlement, and that he had merely intended to reject what was perceived as a proposed amendment of the completed settlement. However, neither counsel nor Mrs. Rosenblum said or did anything further consistent with a belief that the settlement would go forward. On the contrary, nothing was done to clarify the situation until counsel for Mrs. Rosenblum received the letter written by counsel for Jacks or Better. A day after receiving it, counsel for Mrs. Rosenblum called his opponent and attempted to cast his words in a different light, asserting that there was no intention of rescinding or calling off the settlement. Counsel was advised, however, that Mr. Hannegan considered that the settlement was at an end and that the case would be tried. The cause was eventually tried, with the adverse outcome for Mrs. Rosenblum described *ante*.

### III.

Both parties assured the trial court that this case had been settled, and that the only issue on the motion to enforce the settlement was whether the agreement had been rescinded. Although Jacks or Better argued otherwise in its brief, counsel at oral argument unequivocally renounced the position that the case was not settled and asserted to us that the issue was rescission of the settlement. Thus, the critical question before us is a novel one: can the express, unambiguous repudiation of a settlement by counsel of record be deemed effective to rescind the settlement, binding counsel's client? This issue turns largely on the trial judge's findings, which must be imputed to him in the absence of specific findings. The strictures of Rule 73.01, Mo. R.Civ.P., as glossed by the reported cases, must be observed in resolving the issue, and the trial court's order denying enforcement of the settlement must be affirmed unless unsupported by or plainly contrary to the weight of the evidence, or erroneous in law. E.g., *Barton v. Snellson*, 735 S.W. 2d 160 (Mo.App.1987).

In arguing that the settlement was not effectively rescinded, Mrs. Rosenblum first contends that the words of her counsel in the telephone conversation quoted above are not a plain, unambiguous indication of intent to rescind the settlement agreement.

The trial court implicitly found otherwise, and in view of the circumstances we cannot disagree. The words of counsel could hardly be plainer. See, e.g., *Tahan v. Garrick*, 701 S.W.2d 189, 191 (Mo.App.1985); cf. *Transportation Equipment Rentals v. Straudberg*, 392 S.W.2d 319 (Mo.1965).

Of more force is Mrs. Rosenblum's argument that no rescission occurred because Jacks or Better had breached the settlement, and there was no indication that Jacks or Better relied on counsel's words of rescission to its detriment. In other words, Mrs. Rosenblum enjoyed a *locus poenitentiae*, of which she could take advantage until Jacks or Better somehow changed its position; and she acted promptly in recalling the words of rescission. See *Landau v. St. Louis Public Service Co.*, 364 Mo. 1134, 273 S.W.2d 255 (1954).

■ The fulcrum of this argument is the proposition that Jacks or Better breached the settlement by anticipatory repudiation. However, we believe that the trial court could have found that the proposal of a personal guaranty by Mr. Hannegan of payment within twenty-one days, in lieu of the letter of credit with payment in thirty days, was not such a repudiation or renunciation covering Jacks or Better's entire performance as to constitute a breach by anticipatory repudiation. At worst, the proposal of Jacks or Better was merely a tender of defective performance of an ancillary provision of the contract of settlement, not going to the essence of the agreement. Compare *B & B Equipment Co. v. Bowen*, 581 S.W.2d 80, 87–88 (Mo. App.1979) and *Village of Cairo v. Bodine Contracting Co.*, 685 S.W.2d 253 (Mo.App. 1985) (setting forth standards for gauging materiality of a breach) with *Burch v. Union Life Ins. Co.*, 319 S.W.2d 908, 912–13 (Mo.App.1959) and *Carmel v. Dieckmann*, 617 S.W.2d 459 (Mo.App.1981) (defining breach by anticipatory repudiation).

■ The October 12 discussion between counsel concerning Mr. Hannegan's desire to obviate the letter of credit provision manifested no intention on the part of Jacks or Better to refuse to perform the essence of the settlement agreement, payment of $185,000 to Mrs. Rosenblum. On the contrary, the trial court could reasonably have found that, until counsel for Mrs. Rosenblum repudiated the agreement himself, Jacks or Better was ready and willing to perform its chief obligations under the settlement. Tender of defective performance by one party of a condition or promise is not necessarily such a manifestation of lack of intention or ability to perform as to constitute a material breach of contract. *Landau v. St. Louis Public Service Co.*, *supra*, 273 S.W.2d at 259.

■ "Where a party, even without right, claims to rescind a contract, if the other party agrees to the rescission or does not object thereto and permits it to be rescinded, the rescission is by mutual consent. So, a contract will be treated as abandoned where the acts of one party inconsistent with its existence are acquiesced in by the other." *Alropa Corp. v. Smith*, 240 Mo. App. 376, 199 S.W.2d 866, 871 (1947); accord *In re Estate of Reed*, 414 S.W.2d 283 (Mo.1967). Of course, an executory contract, especially one of accord and satisfaction or compromise and settlement, may be rescinded by mutual agreement without other consideration. *Thumm v. Lohr*, 306 S.W.2d 604 (Mo.App.1957); *DeuFriend v. McDermott*, 251 S.W.2d 339 (Mo.App.1952). The trial court here was entitled to find that the contract of settlement had not been breached materially, that (pretermitting the issue of authority) it was repudiated by Mrs. Rosenblum through her attorney, and that this repudiation was acquiesced in or agreed to by Jacks or Better. See *Miran Investment Co. v. Medical West Bldg. Corp.*, 414 S.W.2d 297 (Mo.1967).

■ Assuming that Jacks or Better had in fact breached the settlement agreement in a material way, it does not appear that the record is devoid of support for the proposition that Mrs. Rosenblum nevertheless elected to rescind the agreement, thereby waiving the breach through acquiescence. E.g., *Tudor v. Tudor*, 617 S.W.2d 610 (Mo.App.1981). Although the record is sparse on the issue of change of position by Jacks or Better in reliance on the statements of Mrs. Rosenblum's attorney, the

trial court could reasonably have found that Mrs. Rosenblum and her attorney did indeed intend to rescind the settlement, that their silent inaction between October 12 and October 18 was deliberate, that Jacks or Better relied on the statements of Mrs. Rosenblum's attorney at least to the extent of taking no further action to comply with the settlement, in the belief that Mrs. Rosenblum intended to go to trial, and instead initiated steps (albeit undefined) to prepare for trial. On balance, even on Mrs. Rosenblum's strongest theory, the facts cannot be said to preponderate in favor of her position to the point that the trial court can be held in error. *Cf. Freshour v. Schuerenberg,* 495 S.W.2d 116 (Mo.App. 1973).

## IV.

■ Turning to the critical issue in this case adumbrated above—whether an express repudiation of a settlement by counsel of record can be deemed effective to rescind the settlement so as to bind his client—we adhere to the general principle that the fact of an attorney's employment alone implies no authority to settle or compromise the client's case. E.g., *Carroll v. Ghidoni,* 730 S.W.2d 280, 283 (Mo.App. 1987); *Parr v. Chicago, B. & Q. R.R. Co.,* 194 Mo.App. 416, 184 S.W. 1169 (1916). *A fortiori,* the fact of employment implies no authority in an attorney to rescind a settlement, for rescission of a settlement is the surrender of a substantial right of the client. Thus, whether the issue is formation of a settlement or rescission of a settlement, the crux is the same: whence came the authority of the attorney to act as he did?

■ As delineated recently in *Barton v. Snellson, supra,* 735 S.W.2d 162–63, the law of agency categorizes authority as express, implied, or apparent. Express authority is the direct manifestation of the principal (client) to the agent (attorney) whereby power to act for the principal in a matter is conferred on the agent. Express authority can be created by knowing acquiescence of the principal in the conduct of his agent. *Id.* Implied authority flows from the express authority, and encompasses the power to act in ways reasonably necessary to accomplish the purpose for which express authority was granted. Employment of an attorney to act for a client in a lawsuit expressly authorizes his appearance in the case, and implicitly authorizes the attorney to bind the client in matters of procedure, including any stipulation for the control of the progress of the action. *Parr v. Chicago, B. & Q. R.R. Co., supra; Wenneker v. Frager,* 448 S.W.2d 932 (Mo.App. 1969). Absent the grant of express authority to settle a lawsuit, an attorney's authority to do so should be analyzed in terms of apparent authority. See generally Annot., 30 A.L.R.2d 944 (1953).

■ It has long been recognized that an attorney can have apparent authority to act for a client. E.g., *Black v. Rogers,* 75 Mo. 441 (1882); *Davidson v. Rozier,* 23 Mo. 387 (1856); *Trustees of Exermont Subdivision v. LaDriere,* 636 S.W.2d 90 (Mo.App.1982). Such apparent authority is created by conduct of the principal (the client) which causes a third person reasonably to believe that another (the attorney) has the authority to act for the principal. *Barton v. Snellson, supra.* Outside the context of settlement of litigation, our courts have been fairly consistent in applying traditional agency principles to assess the power of an attorney to bind his client. In conformity to the principles discussed above, attorneys have been held not to have had implied or apparent authority to renounce a devise, *Sudekum v. Fasnacht's Estate,* 236 Mo.App. 455, 157 S.W.2d 264 (1942), to confess liability on a debt, *Couch v. Landers,* 316 S.W.2d 588 (Mo.1958), to create a client's obligation to pay a fee to another attorney, *Robinson v. Deweese,* 379 S.W.2d 831 (Mo.App.1964), or to endorse a client's name on a settlement check, *Aetna Casualty & Surety Co. v. Traders National Bank & Trust Co.,* 514 S.W.2d 860 (Mo. App.1974).

Regrettably, the cases in Missouri arising out of settlements gone awry have entailed a mutation of the general principles of agency. An attorney's authority to

perform an act in connection with the procedural aspects of a lawsuit, as distinct from settlement thereof, often has been said to be "presumed." E.g., *Parr v. Chicago, B. & Q. R.R. Co., supra,* 184 S.W. at 1170. Thus, when an attorney files a motion or even consents to entry of judgment, his authority to do so is "presumed, prima facie at least, and the burden of showing his want of authority rests upon the party who questions it, unless such authority is denied by the attorney's client." *Id.;* see also Annot., *supra,* 30 A.L.R.2d at 953–54, citing cases concerning this presumption. This "presumptive" authority of an attorney seems to us to be but another way of stating that an attorney of record has implied authority to conduct the procedural aspects of the lawsuit; for it is the attorney who is entitled to present the case to the court. However, the introduction of the word "presumption" into opinions on the authority of attorneys to settle lawsuits has led our courts to an anacoluthon in the law of agency. In *Kahn v. Brunswick–Balke–Collender Co.,* 156 S.W.2d 40 (Mo. App.1941), this Court reiterated the presumption language from *Parr, supra,* and seemingly blurred it by applying a "presumption" to an out-of-court settlement, not evidenced by entry of judgment. Yet the Court proceeded to state that an attorney may have *apparent* authority to compromise a lawsuit, which authority may be shown by evidence of the facts and circumstances attending the actions of the parties. *Id.* at 43. In *Kahn,* the authority of the attorney to conclude a settlement was not really in dispute. The issue was whether the settlement with one defendant was effective to release other, non-settling codefendants. The plaintiff never claimed that the settlement agreement was not authorized. *Id.*

The language of presumption appears again in *Southwestern Bell Tel. Co. v. Roussin,* 534 S.W.2d 273, at 276 (Mo.App. 1976). In that case, settlement negotiations occurred between the attorneys alone, a settlement offer was conveyed by counsel for the plaintiff and accepted by counsel for defendant, who had represented that he had authority to settle on behalf of his client. The defendant then refused to perform. A motion to enforce the settlement was denied, after the attorney for the defendant testified that he had no authority from his client to accept the settlement offer. This Court stated that, under the facts of the case, the attorney's authority to settle was presumed, but the attorney's testimony denying his authority, accepted by the trial court, sufficed to rebut the presumption. *Id.,* 277.

Following *Southwestern Bell,* this Court again addressed the issue of an attorney's authority to settle in *Leffler v. Bi–State Dev. Co.,* 612 S.W.2d 835 (Mo.App.1981). There, the attorneys negotiated, defendant's attorney offered a sum in settlement, and plaintiff's attorney accepted. Plaintiff refused to perform, and testified that his attorney had no authority to accept the settlement offer in question. The trial court enforced the settlement. This Court affirmed. After reviewing *Parr, Kahn, Southwestern Bell,* and other intervening cases, the Court propounded the following, 612 S.W.2d at 837:

> Where it is shown that a party's attorney of record 'represented that he had such authority [from the client] and ... did reach an agreement with [the other party's] counsel to settle ...', then 'it was incumbent upon [the party] to prove to the trial court that [his] attorney lacked authority to settle the case, since his act of settling ... is presumed prima facie to be authorized.' [Quoting *Southwestern Tel. v. Roussin,* 534 S.W.2d at 273, 276.]

The *Leffler* rule, if we may so designate it, has been restated and followed in *Carroll v. Ghidoni, supra,* and *Johnson v. Massey–Ferguson, Inc.,* 679 S.W.2d 375 (Mo.App.1984). In *Barton v. Snellson, supra,* the rule was analyzed and criticized, but nevertheless extended to situations in which an attorney never expressly represented that he had authority to settle a case, but implied by his conduct that he did.

We think it significant that *Leffler,* its progeny, and its direct antecedents (*Parr, Kahn, Southwestern Bell,* all *supra*) all arose in the context of settlement of a

lawsuit, and all place a substantial burden on the client to disprove his own attorney's authority if the client wishes to avoid the settlement. Only where the trier of fact has been convinced that authority to settle was truly lacking, *Southwestern Bell Tel. Co. v. Roussin, supra,* or where the evidence has been deemed insufficient to raise the presumption of attorney authority, *Landmark Bank v. First National Bank,* 738 S.W.2d 922 (Mo.App.1987), have our courts allowed clients to avoid or attempt to avoid settlements concluded by their attorneys. By focusing on the acts or representations of the attorney (agent), instead of the client (principal), however, the courts have in effect resorted to a new species of authority, "presumptive" or "presumed" authority, rather than the equally serviceable concept of apparent authority upon which the earlier cases, like *Kahn,* and *Parr,* were firmly grounded.

We have engaged in this lengthy analysis of the cases on attorney authority as a necessary predicate for our consideration of whether the issue of an attorney's rescission of a settlement is controlled by a corollary of the *Leffler* rule, viz., that the acts and statements of Mrs. Rosenblum's attorney raise a presumption that he was authorized to rescind the settlement, which presumption was not rebutted by Mrs. Rosenblum to the satisfaction of the trier of fact. Although we can discern no principled basis upon which to jettison the *Leffler* rule in this context, we likewise believe that we need not rely on a *Leffler* corollary to affirm the judgment in this case. Moreover, we are not convinced that the *Leffler* presumption is wholly irreconcilable with the concept of apparent authority, albeit we attempt no such reconciliation here. In this connection, we advert to the Restatement (Second) of Agency, § 49, comment c:

Inferences from agent's position. Acts are interpreted in the light of ordinary human experience. If a principal puts an agent into, or knowingly permits him to occupy, a position in which according to the ordinary habits of persons in the locality, trade or profession, it is usual for such an agent to have a particular kind of authority, anyone dealing with him is justified in inferring that he has such authority, in the absence of reason to know otherwise. The content of such apparent authority is a matter to be determined from the facts.

Applying the general principles of agency to the case at bar, we believe that the trial court could have found that Mrs. Rosenblum knew that settlement negotiations were in progress between the attorneys, that one and possibly two offers by the other side were rejected by her attorney without advance consultation with her, that the final settlement agreement contained provisions (specifically the prohibition on her entering into a competing business for five years) which her attorney had not discussed with her at all in advance, and that her attorney had rejected—again without advance consultation—what she and he later claimed to be a material change in the settlement, namely deletion of the letter of credit. The trial court could also reasonably have found from this record that the attorney for Jacks or Better was never on notice from either Mrs. Rosenblum or her attorney that Mrs. Rosenblum's attorney was functioning under any limited authority with respect to the settlement. Notwithstanding a possible inference of limited authority from the delay in accepting the last offer of $185,000, in the context of the settlement negotiation as a whole, we think that the attorney for Jacks or Better could reasonably believe that his opponent had plenary authority with regard to the settlement, including authority to reject offers or rescind the settlement altogether if it appeared to be in Mrs. Rosenblum's interest to do so.

The lynchpin of the denial of enforcement of the settlement in this case is the reasonableness of the belief of counsel for Jacks or Better, as expressed in his own words at the hearing:

Q. When you look back on it, did you have any doubt at the time that Marty told you this that he had authority to tell you the settlement was off?

\*  \*  \*  \*  \*  \*

THE WITNESS: No, I was familiar with [counsel's] relationship with the plaintiff and the plaintiff's husband and I'm very familiar with [counsel] over a number of years. I felt when he told me the deal was off, the deal was off, and that, knowing Marty, he had the authority to do that. And I—you know, that's why I went ahead and told Hannegan the deal was off.

The conclusion of counsel for Jacks or Better, in light of all the facts and circumstances of this case, casts in sharp relief the fundamental common sense of the precept stated by the Restatement, comment c, quoted above. Mrs. Rosenblum knowingly permitted her attorney to occupy the position of exclusive negotiator in the settlement process, and to reject offers and accept major provisions of a settlement without any indication of consultation with her. Even on Mrs. Rosenblum's own version of what was intended by the words of her attorney used on October 12, it is clear that she had accorded her attorney the plenary authority to reject any material change in the settlement proposed by the other side. We think that counsel for Jacks or Better could reasonably conclude, in light of the history of the prior negotiations, that his opponent had the authority to rescind the settlement when a change was proposed. This authority was apparent, in the accepted sense of that term in the law of agency. No "presumption" is needed when the facts and circumstances are such as will authorize a reasonable and logical inference that the attorney, as agent, was empowered to act for the client, as principal. See *DeWitt v. Lutes*, 581 S.W.2d 941, 949–50 (Mo.App.1979). We believe that trial judges are in the best position to assess the content of an attorney's authority to settle or rescind in light of the individual facts and circumstances of the case and the customs of lawyers and clients in the locality.

The motion to enforce the settlement is in the nature of an action seeking specific performance. In such a case, the burden is on the movant to prove entitlement to relief by convincing the trial court to exercise its discretion to enforce the agreement. *Landmark Bank v. First National Bank*, supra, 738 S.W.2d at 923; *DeWitt v. Lutes*, supra, 581 S.W.2d at 945–46. Because the facts support the conclusion that Mrs. Rosenblum's attorney had apparent authority to rescind the settlement, it is patent that Mrs. Rosenblum failed to carry her burden in this case, and the order denying enforcement of the settlement must be affirmed.

## V.

Affirmance of the order denying enforcement of the settlement in this case brings in its train the obligation to examine and correct the errors, if any, made at the trial of this case on the merits, before a different judge.

At the outset, we observe that Mrs. Rosenblum has paid the jury award on the counterclaim in this case. This information comes to us via attachments to the brief for appellant, which can be considered on the question of mootness of the appeal. Ordinarily, voluntary payment of a judgment precludes appeal of that judgment.[1] However, we do not believe that Mrs. Rosenblum's payment herein moots this appeal or precludes us from remanding the matter of the counterclaim for further proceedings, for several reasons.

---

1. In this vein, we feel obliged to comment briefly on *King v. Campbell*, 107 Mo.App. 496, 81 S.W. 635 (1904). In that case, cited by neither party here, a plaintiff sued on a promissory note given in the purchase of a business. The defendant answered and counterclaimed, alleging fraud. The jury found all issues in favor of defendant, awarding one dollar on the counterclaim. Plaintiff paid the judgment and appealed. The court of appeals held that voluntary payment of the judgment barred the appeal, but the court also used language suggesting that the verdict on the counterclaim destroyed the claim on the promissory note. This seems to be dicta; and there is no discussion of the choice of remedies available to victims of fraud. Furthermore, the court referred to § 605, R.S.Mo. 1899, in discussing the effect of the verdict on the counterclaim. That statute has long since passed beyond our ken. We cannot view *King v. Campbell* as a sufficient bastion from which to defend the judgment below in this case.

First, Jacks or Better has not sought dismissal of Mrs. Rosenblum's appeal, suggesting recognition that the payment was not voluntary. Second, the payment does not fully satisfy the judgment against Mrs. Rosenblum, since the award of attorney's fees is still outstanding. Finally, the documents appended to appellant's brief clearly reflect that payment of the judgment was made in lieu of posting a supersedeas bond or submitting to execution, and not voluntarily, in the sense that payment was made so as to end the matter. Accordingly, the appeal from the judgment on the counterclaim is before us and there is no restriction on the manner in which we may dispose of it under the law. See *Kinser v. Elkadi*, 654 S.W.2d 901 (Mo. banc 1983); *Edith Inv. Co. v. Fair Drug, Inc.*, 617 S.W.2d 567, 569 (Mo.App. 1981).

The trial of this case turned on the issue of fraudulent misrepresentation. The jury (with, as we have said, ample support in the record) found that such misrepresentation occurred. We do not disturb that finding, made under instructions correctly stating the law on liability. However, the trial court permitted Jacks or Better (over timely and sufficient objection) to use fraud both defensively—to defeat the recovery on the promissory notes; and offensively—to recover on the counterclaim. This was contrary to law.

A victim of fraud has a choice under Missouri law: either (a) he rescinds the transaction, tenders return of any benefits he obtained by the transaction, and seeks judicial aid to recover the benefits he conveyed, or (b) he adheres to the transaction, retaining whatever benefits inured to him, and seeks to recover in damages the difference in value between what he actually received and what he would have received had there been no fraud. *Baker v. Atkins*, 258 S.W.2d 16 (Mo.App.1953). In other words, the victim of fraud can undo the transaction or he can obtain the benefit of the bargain. He cannot do both. *Carter v. Butler*, 264 Mo. 306, 174 S.W. 399 (banc 1915); *Auffenberg v. Hafley*, 457 S.W.2d 929, 935 (Mo.App.1970); see also *Clayton Brokerage Co. v. Pilla*, 632 S.W.2d 300 (Mo.App.1982); *Stadium Bank v. Milton*, 589 S.W.2d 338 (Mo.App.1979); *Harper v. Barket*, 557 S.W.2d 455 (Mo.App.1977); *Yeager v. Wittels*, 517 S.W.2d 457, 465 (Mo.App.1974).

In the case at bar, Jacks or Better never prayed for rescission of the transaction whereby it acquired the assets of Stange Company, nor did it pray for rescission of the sale contract or of the renewal notes given to Mrs. Rosenblum, which were rightly regarded by it as merely a continuation of the original transaction. See *Cantley v. Plattner*, 228 Mo. App. 411, 67 S.W.2d 125 (1934). There is no evidence that Jacks or Better tendered, sought to tender or desired to tender the benefits of that transaction to Mrs. Rosenblum and rescind it in its entirety. There was no evidence that Jacks or Better was prevented or excused from tendering the assets of Stange to Mrs. Rosenblum. On the contrary, the record is clear that Jacks or Better wanted it both ways: it wanted to avoid payment of the last installment of the purchase price and at the same time recover damages. At trial, Mrs. Rosenblum repeatedly moved to compel an election, and moved for a directed verdict on her claim on the notes. The trial court chose not to force an election. The cases make plain that this motion should have been granted, or a directed verdict entered. *Auffenberg v. Hafley, supra;* see also *Mills v. Keith Marsh Chevrolet, Inc.*, 549 S.W.2d 604 (Mo.App.1977). Because the record reflects a positive intention on the part of Jacks or Better not to rescind the fraudulent transaction, and fails to show any excuse for refusal to tender to Mrs. Rosenblum the return of the assets of Stange Company, it follows that Mrs. Rosenblum was entitled to a directed verdict on her claim on the notes.[2] *Cf. Harper v. Barket, supra.*

---

2. We are mindful of the revulsion shown by our courts when perpetrators of fraud seek judicial aid to enforce the fraudulent transaction, and we have carefully considered whether this case warrants the disposition made in *Crawford v. Smith*, 470 S.W.2d 529 (Mo. banc 1971), in which an erroneous verdict was affirmed because, on the whole, there was no prejudice to

Jacks or Better attempted to avoid the principles governing election of remedies in cases of fraud by submitting a damage instruction which omitted the unpaid notes from the calculation of the award of damages on the counterclaim. Thus, Jacks or Better argues that the established principles set forth above have been observed, since the jury awarded damages on the counterclaim only on the basis of the difference between the sum Jacks or Better actually paid for Stange Company and the value actually received. This argument does not save the day. The reason for the rule adopted in Missouri is that no one can retain the benefits of a bargain and at the same time evade its obligations. None of the cases cited by Jacks or Better holds otherwise. Most of them are silent on the precise issue before us; some actually support the result we reach. Compare *Baker v. Atkins, supra,* with *Horwitz v. Schaper,* 119 S.W.2d 479 (Mo.App.1938) and *Cantley v. Plattner, supra,* (tender required if possible, but excused in these cases). Jacks or Better proffers no acceptable reason to excuse tender in this case.

The fundamental flaw in the submission on Jacks or Better's counterclaim was that it called upon the jury to *assume* that the benefits received by Jacks or Better in the transaction with Stange Company were less than the agreed purchase price. By returning verdicts in favor of Jacks or Better on both Mrs. Rosenblum's claim and the counterclaim, the jury effectively awarded Jacks or Better the sum of $313,600 in damages (the principal amount due on the notes, plus $64,000 on the counterclaim). We cannot say, as a matter of law, that the jury's implicit computation was not prejudicial to Mrs. Rosenblum.[3]

In light of Jacks or Better's submission to the jury, we are left with the question of the proper scope of remand. Rule 84.14, Mo.R.Civ.P. Since the factual issue of fraud has been clearly addressed, we see no need to remand for a new trial unreservedly. Since the record is emphatic that Jacks or Better wished to retain the diminished benefits of the transaction and enforce it by way of its counterclaim, and since the only error below which cannot be corrected without another submission to the jury is the question of damages on Jacks or Better's counterclaim, it follows that a new trial only on that issue should be ordered. The measure of damages will be, of course, that enunciated in the cases cited above, viz., the "benefit of the bargain." *Auffenberg v. Hafley, supra; Baker v. Atkins, supra.*

## VI.

In regard to the trial court's award of fees and expenses to Jacks or Better, we perceive no basis in the law of Missouri for that award. The situations in which fees are recoverable under Missouri law have been delineated recently in *Ohlendorf v. Feinstein,* 697 S.W.2d 553 (Mo.App.1985) and need not be reiterated at length here. Suffice it to say that no statute or contractual provision binds Mrs. Rosenblum to pay fees. The counterclaim in this case proceeded wholly upon a tort theory; in any event, Mrs. Rosenblum was not personally made a party to any contract between Stange Company and Jacks or Better. No collateral litigation has befallen Jacks or Better attributable to the conduct of Mrs. Rosenblum forming the basis of the counterclaim herein. Nor has Jacks or Better created a common fund at its sole risk, entitling it to an equitable fee award to "balance the benefits." The fee award in this case cannot stand.

---

the defendant to be found in the verdict. There, however, the plaintiff had paid a large sum to the defendant for stock which he never even received. In this case, Jacks or Better actually received considerable assets and a going concern, albeit one with less value than represented.

**3.** We note also, that, while it is certainly true that a contract induced by fraud gives rise to both an action for breach of contract and an action in tort, separate damages must be pleaded and proved on each claim. *Clayton Brokerage Co. v. Pilla, supra.* Jacks or Better neither pleaded special damages nor sought instruction on a breach of contract theory. Damages on the counterclaim were based solely on the tort theory.

## VII.

In conformity to the foregoing, the order denying the motion to enforce the settlement agreement is affirmed. The judgment on Mrs. Rosenblum's claim for recovery on the promissory notes is reversed and remanded for entry of judgment in favor of Mrs. Rosenblum. The judgment on the counterclaim is likewise reversed and remanded for a new trial on the issue of damages only. The order awarding attorney's fees to Jacks or Better is reversed.

It is so ordered.

CARL R. GAERTNER, P.J. and SIMEONE, Senior Judge, concur.