**McPHERSON REDEVELOPMENT CORPORATION, an Urban Redevelopment Corporation, Plaintiff–Respondent,**

v.

**Richard SHELTON, et al., James H. Cody, Defendants–Appellants.**

No. 54483.

Missouri Court of Appeals,
Eastern District,
Division Five.

April 25, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 23, 1989.

Margaret B. Wilson, Lena A. Conley, Darryl A. Piggee, St. Louis, for defendants-appellants.

Gerard Timothy Carmody, Sheila K. O'Malley, St. Louis, for plaintiff-respondent.

SIMEONE, Senior Judge.

This is an appeal by defendant-appellant, James H. Cody, the condemnee of two parcels of land located at 4103, and 4105–4109 McPherson Avenue, from an order and judgment entered on February 8, 1988 sustaining the plaintiff-respondent's motion to enforce a settlement agreement which the court found the parties had entered into.

The judgment sustaining the respondent's motion to enforce the settlement agreement ordered appellant, Cody, to convey the condemned parcels of land to plaintiff by general warranty deed. Appellant appeals. We affirm.

This is a court-tried case. In such a proceeding, the appellate court must sustain the order and judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Seabaugh v. Sailer*, 679 S.W.2d 924, 925 (Mo. App.1984).

On March 27, 1987, McPherson Redevelopment Corporation, a corporation organized and existing under chapter 353, R.S. Mo., 1986, (The Urban Redevelopment Law) filed its petition in eminent domain seeking to condemn numerous parcels of real estate in the City of St. Louis, including two parcels, parcels 26 and 27, owned by James Hollivan Cody also known as Howard or James Cody. Hearings were conducted on the petition at various times in 1987. On August 26, 1987, the circuit court of the City of St. Louis entered an order of condemnation adjudging and decreeing that the properties as set out in the petition "stood condemned" for the uses and purposes set out in the petition and that the plaintiff McPherson have the right to take possession or make use thereof immediately upon payment to the circuit court of the amount assessed in the commissioner's report. The court appointed three commissioners to assess damages suffered by Cody "as a result of the taking." On October 9, 1987, the commissioners conducted an inspection of the parcels and on October 22, 1987, the commissioners held a hearing relating to the value of the parcels. At the hearing, the vice president of McPherson, its attorney and the appellant and his then attorney were present. Both sides presented evidence to the commissioners as to the value of the parcels. On December 1, 1987, the commissioners made their second report as to the amount of damages for parcels 26 and 27 in the amount of $57,-

774.00. On December 8, 1987, appellant filed written exceptions to the commissioners' report.

After the commissioners' hearing as to the value of the parcels, the parties remained in the hearing room and engaged in negotiations regarding the purchase price and the conveyance of the parcels in order to settle the litigation. Some written notes were taken.

On November 16, 1987, McPherson filed its motion to enforce the settlement agreement alleging that the court had earlier entered its order of condemnation and that the parties had met and negotiated a settlement of the litigation under which Cody agreed to sell the parcels for $70,000 and other specified terms, but has refused to do so. A formal written agreement was drawn by counsel for McPherson, but appellant refused to sign it.

Hearings were held on the motion to enforce settlement on November 24, and December 22, 1987. At the hearing the vice president of McPherson, Hilliary Zimmerman testified. She testified that immediately after the commissioners' hearing on October 22, discussions took place for approximately two hours concerning negotiations. Most of the discussion centered around the purchase price arrangements for conveyance of the property and relocation of the tenants. She testified that an agreement was reached and that $70,000 was the price agreed upon by the parties for the properties. Appellant Cody testified and denied that he engaged in negotiations regarding a settlement or that a "direct price" had been agreed upon.

At the second hearing on December 22, Mr. Cody testified that he did not agree to any kind of settlement with respect to the disposition of the matter. At this hearing Cody's attorney testified (Cody was represented by different counsel at this second hearing). Cody's counsel stated that he "thought" that the parties agreed to settle "this litigation for seventy thousand dollars," and that the attorneys for McPherson would prepare a settlement document reflecting the seventy thousand settlement and other terms. "In my opinion I thought they had [agreed to settle] but apparently there was a difference between what I thought, in my opinion, and what my client [Cody] thought." The attorney testified that "Immediately before the seventy thousand dollar offer was ... made, he [Cody] said, 'Okay, I'll take it.'"

The attorney for McPherson also testified in this second hearing to the effect that an agreement had been reached as to the purchase price—$70,000.

After the hearings on the motion to enforce settlement, the court made lengthy findings of fact and conclusions of law. In its findings, the court noted the facts stated above, found that at the conclusion of the negotiations "Cody and McPherson reached an agreement to settle the litigation," that Cody "negotiated for and completely understood the terms of the Agreement" to convey the parcels for a total price of $70,000 and other terms, and that on November 9, 1987 Cody wrote a letter to his attorney in which he discussed and reaffirmed his agreement to settle the litigation for $70,000. The court found that an agreement took place and that Cody's testimony to the contrary is "simply not credible."

The trial court found as a matter of law that the Statute of Frauds was not applicable because a condemnation order had been entered, Cody never disputed McPherson's right to acquire his property and the only dispute was the amount of damages so that an oral agreement compromising the issue is enforceable. The court further found that even if the statute of frauds were applicable, the letter Cody wrote to his attorney in which he referred to the sales price as $70,000 was a sufficient memorandum, and further that both parties commenced performance of their obligations under the agreement. The court therefore concluded that the parties entered into a "valid, binding and enforceable agreement to settle this litigation" and Cody has breached the agreement. The court therefore sustained McPherson's motion to enforce settlement and ordered Cody to "convey parcels 26 & 27 to Plaintiff by General Warranty Deed."

On appeal, appellant contends that the trial court erred in (1) sustaining the motion to enforce the settlement agreement because it is patent that a conveyance of real property was required hence it is a matter subject to the statute of frauds which requires a writing and no writing was formally executed by the parties, (2) holding that the "writings" of the vice president of McPherson and appellant were sufficient to satisfy the statute of frauds because there is no evidence that they support the essential terms of the agreement, and (3) sustaining the motion to enforce settlement, the appellant was deprived of a jury trial. Appellant argues that the central issue in the cause involves the question whether the statute of frauds applies.

■ Appellant relies principally on *DeWitt v. Lutes*, 581 S.W.2d 941 (Mo.App. 1979). *Lutes* was a case involving a boundary dispute between landowners. A motion to compel compliance with an agreed settlement was made. The court affirmed the enforcement of the settlement and stated:

> A compromise settlement is a contract and, in the absence of specific statute, need not be in writing ... unless the subject matter of the compromise is within the Statute of Frauds. In determining whether the Statute of Frauds is applicable to a compromise settlement, the courts are concerned with the intended effect of the compromise, and not with the question whether the parties' antecedent claims are based on matters governed by the Statute of Frauds. If the compromise itself does not fall within the scope of the statute, then the statute is inapplicable to the compromise. Since a compromise which fixes a disputed or uncertain boundary line is not considered to involve a conveyance of land or passage of title, but is considered as an effort merely to clarify and give effect to the title ... such an agreement is neither within the Statute of Frauds nor within

the scope of the statutes regarding conveyance of real estate.

*Lutes, supra,* 581 S.W.2d at 945.

Appellant argues that since a conveyance of the two condemned parcels was clearly contemplated and required by the purported settlement agreement and the trial court's own findings include that the terms of the settlement agreement provided that appellant was to convey the parcels for a total price of $70,000 and directs the appellant to convey the parcels to the condemnor, the Statute of Frauds is applicable so that it was unenforceable.

As to whether the statute of frauds applies to the enforcement of this settlement agreement is not easily resolved.

The Statute for the Prevention of Frauds and Perjuries, originally enacted in England in 1677[1] and its Missouri counterpart, § 432.010, R.S.Mo.1986 provides in pertinent part that:

> No action shall be brought ... upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them, ... unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized ...

Under this provision of the statute of frauds, the courts have been very slow to apply it. *Janssen v. Christian*, 57 S.W.2d 692, 694 (Mo.App.1933); 2 Corbin, *supra*, § 275 at 4. The purpose of the statute is to avoid perjury; the statute is viewed with disfavor and is given a narrow construction. J.D. Calamari & J. Perillo, *Contracts*, § 19-1 at 775-776. The statute is designed to avoid dangers to permit a contract of sale to rest in parol. *Tuckwiller v. Tuckwiller*, 413 S.W.2d 274, 278 (Mo.1967). The statute primarily deals with the sale of lands or an interest therein; it does not deal with a conveyance. A conveyance is determined by the law of property and not by the law of contracts or by the statute of frauds. *See* 2 Corbin, *supra*, § 396 at 3561

---

**1.** *See* 2 A. Corbin, *Contracts*, § 275 at 2 (1950).

E.A. Farnsworth, *Contracts,* § 6.5 at 397 (1982); *Jackson v. Shain,* 619 S.W.2d 860 (Mo.App.1981).

The agreement sought to be enforced here is one primarily to settle the condemnation litigation, and the purchase price, conveyance, and other matters. The settlement agreement contemplated a settlement of damages and then a conveyance of the properties and other items. The agreement was not primarily one of sale. Such an agreement to settle the condemnation litigation is not within the terms of the statute of frauds, and neither does the fact that a conveyance was contemplated bring such agreement within the statute. Under such circumstances, there was no agreement violative of the statute of frauds. A settlement agreement need not be in writing to be enforceable. *Carroll v. Ghidoni,* 730 S.W.2d 280, 284 (Mo.App.1987). The determination of whether the statute applies to a settlement agreement depends on the intended effect of the settlement. That principle is recognized, and was relied upon by the trial court, in *DeWitt v. Lutes, supra.* The court there stated that the "courts are concerned with the intended effect of the compromise, not with the question whether the parties' antecedent claims are based on matters governed by the Statute of Frauds." *DeWitt v. Lutes, supra,* 581 S.W.2d at 945.

The trial court was not in error when it found that the settlement agreement was not within the statute of frauds although a conveyance was ordered. In two places the court gave valid reasons. First, in its Conclusions of Law, the court noted that Cody argues that the "Agreement is barred the Statute of Frauds in that it was a verbal agreement that provided for the conveyance of an interest in land. This argument, however, is misplaced. In determining whether the Statute of Frauds applies to a settlement of litigation, the Court must look to the intended effect of the compromise and not whether the antecedent claims are subject to the statute." Second, at the second evidentiary hearing on the motion to enforce settlement, the court held that the statute is not applicable and stated:

The Statute applies where there is a question of the transfer of property. The transfer of this property is going to go forward. The order of condemnation has already been entered.... [T]he property has been transferred in the sense that all [condemnor] has to do is to follow certain procedural steps.

The court's finding that the statute is not applicable is consistent with the unique procedure of condemnation.

A condemnation proceeding under chapter 523, R.S.Mo.1986 is a special statutory action.

It is a single proceeding with two intimately related parts. The first part, the condemnation hearing, is much more than a preliminary hearing on a pretrial motion. [That] hearing is an evidentiary one in which the right or power of the condemnor to condemn the property in question is finally adjudicated. Consequently, the obligation of the condemnee to surrender the property upon payment of damages becomes binding. When the order of condemnation is entered, the substantive rights of the parties with respect to ownership of the property are determined. The second part of the condemnation proceeding is the resolution of damages.

*Washington University Medical Ctr. v. Komen,* 637 S.W.2d 51, 54 (Mo.App.1982). Although title would not pass until the consideration is paid, an order of condemnation had already been entered, so that the paramount issue, if not the only issue, concerned the amount of the condemnee's damages. *State ex rel. Mo. Hwy. & Transp. v. Dooley,* 738 S.W.2d 457, 461 (Mo.App.1987). The hearing in which the right of the condemnor to condemn the property had been finally adjudicated. Consequently the obligation of Cody was to surrender the property upon the payment of damages. In this case, a condemnation order had been entered giving McPherson the exclusive right to the properties. Cody never disputed McPherson's right to acquire the properties. McPherson's acquisition of the property was inevitable. The

only dispute was the amount of damages and other collateral matters which was settled by the agreement.

 Under these circumstances, we hold that the settlement agreement to convey the properties for the price of $70,000 and other terms does not fall within the scope of the Statute of Frauds, § 431.020.[2]

The trial court's finding that the parties entered into a valid, binding and enforceable agreement to settle the condemnation litigation and ordering appellant to convey parcels 26 and 27 by general warranty deed was supported by substantial evidence, was not against the weight of the evidence, and did not erroneously declare or apply the law. The language of *Lutes, supra,* 581 S.W.2d at 945 relating to a conveyance of land or passage of title, must be read in the context of the statute of frauds which relates to the sale of lands. *Lutes* is not controlling.

Finally, we conclude that there was a waiver of jury trial in this case. Rule 69.01(b)(4) provides that parties shall be deemed to have waived a jury trial "by entering into trial before the court without objection." The parties entered the hearings on the motion to enforce the settlement agreement without objection, hence there was a waiver. We find no violation of the right to trial by jury under the circumstances.

We hold the trial court did not err; accordingly the judgment is affirmed.

PUDLOWSKI, C.J., and HAMILTON, J., concur.

---

2. While not necessary for our decision, there was substantial evidence for the court to find that although the statute of frauds may be applicable there were sufficient memoranda to satisfy the statute. The trial court also found that there were written memoranda containing the essential terms of the agreement. After the settlement, appellant wrote a letter to his counsel dated November 9, 1987 in which he identified the parties to the agreement and described the property and referred to the sale price of $70,- 000. This letter, considered with the written notes made by the vice president of McPherson, during the negotiations, is sufficient to satisfy the memorandum requirement. A writing is sufficient to satisfy the statute of frauds if it sets forth the essential terms of the agreement including the parties, the subject matter, the consideration, the price and the promises. *Seabaugh v. Sailer, supra,* 679 S.W.2d at 926 (Mo. App.1984).